## GAMMEL *v.* YOUNG.

Where a bill in chancery alleged that Y. owned a mill site, which was out of
   repair, and in order to repair it, and keep it from going to waste, obtained as-
   sistance from the complainant, who became liable as surety, and thus enabled
   Y. to obtain repairs and materials to the amount of $408.86;  that Y. died on
   the 7th of September, 1846, leaving a widow and six children, three of whom
   were minors;  that after the death of Y. the complainant paid the said amount
   of $408.86, with the understanding that he was to be paid from the prop-
   erty, and the rents and profits thereof;  that G. was appointed administrator
   upon the estate of Y., and with the consent and approbation of the county
   court, and the widow, carried on the business of the deceased, and at-

tended generally to the care and management of the whole property; that after the death of Y. the said mill property still requiring repairs and improvements, the complainant made other large advances, amounting to more than $950, which were expended in making repairs, &c., that were absolutely necessary; that on the 14th of June, 1851, the administrator, with the approval of the said court and the widow, executed to complainant a lease of the premises for one year, with the privilege of renewal for one, two, or three years, at a rent of $400, payable quarterly; that complainant went into possession, and so continued until the 9th of November, 1852, and accounted to the administrator for the rents, with the approbation of the widow and the court; that on the 1st of September, 1851, the complainant purchased the interest of the three heirs of Y. who were of age; that on the 18th of April, 1852, C. was appointed guardian of the estate of the minor heirs, and in May following, commenced a suit to recover possession of the premises; that the complainant set up as a defence to that suit, the advances made by him on the premises, and his right to a lien, which defence was sustained by the District Court; that on appeal, the Supreme Court reversed the judgment, and intimated that the defendant's remedy must be sought in equity, which cause is still pending; that the widow was virtually a party to the cause, by her aid and encouragement therein; that prior to the appointment of C. as guardian, the administrator acted virtually as the guardian of the interest of the minor heirs; that on the 20th of February, 1852, the widow instituted proceedings for dower in the premises, and claiming that she was entitled to dower in fee simple; that a sale of the property was made by order of the court, and one W. became the purchaser; that W. by fraud and misrepresentation, procured L., the sub-tenant of complainant, to attorn to him, and he thus obtained possession of the premises; that complainant had no legal notice of this proceeding, and the proceedings and sale are illegal and void; that the widow then commenced proceedings in the county court, showing the sale to W. for $1,800, alleging that a portion of her dower was not secured, and praying the appointment of referees, &c., in which suit, the complainant pleaded the matters set up in this bill; that the rents and profits received by him, have not, as yet, been sufficient to repay the money loaned and advanced; and that W. had full notice of the equities of complainant; and where the bill made the widow, the administrator, the minor heirs, and the purchaser, parties defendant; and prayed that the proceedings in dower, be declared null and void, and to give no title to W.; that the whole of the matters in dispute, and the matters of account be settled; and that the rights of the parties, one with another, concerning this property, and matters growing out of it, be established; and where the bill was demurred to, on the ground that it is multifarious, ambiguous and uncertain, and for the reason that the complainant had not attached any bill of particulars to his bill, nor in any manner shown how much of the money advanced had been paid, nor how much remains due, which demurrer was sustained.

*Held,* 1. That if the object of the bill was only to establish a lien on the property for the money advanced, that the respondents were properly made parties.

2. That in order to establish such lien, it was not necessary to set aside the proceedings in dower, and W.'s title under them, *altogether*.

3. That the proceedings in dower, and the subsequent sale, were subject to the lien of the complainant.

4. That if it was the purpose of the bill, to set aside the proceedings in dower, and the sale to W. under them, in addition to establishing the lien of the complainant, the bill was multifarious.

5. That the bill aimed at establishing the lien only, and was not multifarious.

6. That the bill was defective in not making a statement, showing his settlement with the administrator, and the amount of money still due the complainant.

### *Appeal from the Jackson District Court.*

THIS cause stands on demurrer to a bill in chancery. The facts alleged, are substantially as follows: That David Young owned a mill site in Jackson county, which was out of repair, and in order to repair it, and keep it from going to waste, he obtained assistance from the complainant, who became liable as surety, or in some manner, and thus enabled Young to obtain repairs or materials to the amount of $408.86, which Gammel paid after the death of Young. This was under the understanding that Gammel was to be paid from the property, and the rents and profits of it. Young died on the 7th of September, 1846, leaving a widow and three minor children, and three children of age. John Galloway was appointed administrator upon the estate, and with the consent and approbation of the probate court, and of the widow, carried on the business of the deceased, and attended generally to the care and management of the whole property. The petition further alleges, that after the death of Young (but what time, is not stated), the said property still requiring repairs and improvements, he made other large advances, amounting to more than nine hundred and fifty dollars, which were expended in making repairs, &c., which were absolutely necessary. On the 14th of June, 1851, Galloway, the administrator, with the approval of the said court and of the widow, executed to Gammel a lease of the premises for one year, with the privilege of renewal for one, two or three years, at a rent of $400, payable quarterly. Gammel went into possession, and so continued until the 9th

of November, 1852, and accounted to the administrator for the rents, with the approbation of the widow and the court. On the 1st of September, 1851, Gammel purchased the interest of the three heirs who were of age. On the 18th of April, 1852, Curry was appointed guardian of the estate of the minor heirs, and in May following, commenced a suit to recover possession of the premises. Gammel set up as a defence the above matter of the advances, and his right to a lien; which defence the District Court sustained. But, on appeal, the Supreme Court reversed the judgment, and intimated that the complainant's remedy, if he had any, must be sought in a court of equity. That cause is alleged to be still pending. The bill charges that the widow was virtually a party to the cause, by her aid and encouragement therein. The complainant also alleges, that prior to the appointment of Curry, the administrator acted virtually as the guardian of the interest of the minor heirs. On the 20th of February, 1852, the widow instituted proceedings for dower in the premises. It is averred that the proceedings were conducted as upon the ground, that she was entitled to dower in fee simple. A sale of the property was made by order of the court, and one Wynkoop became the purchaser; and it is alleged that Wynkoop, by fraud and misrepresentation, procured John Levan, the sub-tenant of Gammel, to attorn to him, and thus obtained possession. Plaintiff claims that he had no legal notice of this proceeding, and that the proceedings and the sale are illegal and void. Mrs. Young, the widow, then commenced a proceeding in the county court, showing the sale to Wynkoop for $1,800, and alleging, that a portion of her dower was not secured, and praying the appointment of referees, &c. In that cause, Gammel pleaded the substance of the present bill. The bill alleges that Wynkoop had full notice of Gammel's equities. Complainant further avers, that the rents and profits received by him, have not, as yet, been sufficient to repay the money loaned and advanced. And the bill prays that the above proceedings in dower, be declared null and void, and to give no title to Wynkoop; that the whole of the matters in dispute, and

the matters of account, be settled, and the rights of the parties one with another, concerning this property and matters growing out of it, be established. To this bill the defendant demurred, and the court sustained the demurrer. But upon what ground it was sustained, or whether upon all, does not appear.

*Smith, McKinlay & Poor*, for the appellant.

Before proceeding with the points made by the demurrer, we will state briefly the principles on which the bill is founded:

1. The contract between Gammel and Young, before Young's death, entitles Gammel to a lien on the land, for the amount of moneys furnished by Gammel, up to the time of Young's death. And even if Wynkoop had any title, it would be subject to this lien, for the bill charges him with notice of the rights and interests of Gammel. 1 Story's Eq. Juris. § 395; also § 506, as to lien.

2. It was the duty of the guardian, and Galloway was virtually the guardian, to maintain the mill property. See Magna Charta, 49 and 50, Art. III, (5) and 69, (V). And having expended moneys for repairs absolutely necessary for the maintenance of the property, which moneys were furnished by Gammel; then Gammel should have a lien on the property for the repayment of these moneys. See 1 Domat, 683, § 1742; 4 Kent's Com. 370; 2 Story's Equity Juris. §§ 1237 and 1239; *Green, admr. of Ross* v. *Grimshaw*, 11 Illinois, 391. And Wynkoop had notice of Gammel's rights and interests; so, even if he obtained any title by purchase, it was subject to these rights.

3. Gammel made purchase of one-half of the place, from three of the adult heirs, and obtained a lease from Galloway, with consent of the widow, of the other half; he had, therefore, rightful possession of the premises, and while in possession, he accounted for the rents and profits at their fair and reasonable value. What more could be demanded than that one tenant in common, who had possession of the whole,

should account with the other tenant in common, for the rents and profits at their reasonable value ?

4. The title of Wynkoop is wholly void, because it is founded on a proceding that is erroneous and illegal from beginning to end.

*First.* David Young died in September, 1846, and by the law then in force (Revised Stat. 1843, p. 722, chap. 13), his lands, subject to his debts, became vested in his children. It ceased to be the estate of David Young, deceased, except so far as the debts (if any) of said Young were concerned, and became the estate of his heirs. Notwithstanding this, five and a half years thereafter, namely, in February, 1852, Mrs. Young commenced proceedings in the county court, for her dower in the lands ; but the county court had not jurisdiction, for not being the estate of a decedent, it did not come within section 1272 of the Code, where the jurisdiction of the county court is defined.

*Second.* At the time of the death of Young, the only court that had jurisdiction in dower, was the District Court. · See Revised Stat. of 1843, p. 527 ; and Laws of 1846, p. 2. And the interest of the doweress was only one-third *for life;* and the way in which that third was to be given her, when the property was not susceptible of assignment by metes and bounds, was " that the widow shall thereafter enjoy one-third of the rents and profits of said property." See Laws of 1846, p. 2.

The dower given by the Code, section 1394, is an entirely different thing ; it is *one-third in fee simple* ; and the manner it was to be given, when it could not be assigned by metes and bounds, is adapted only to a fee simple interest. And so, even if the county court had jurisdiction in regard to dower in this property, it could only proceed in accordance with the statute of 1846, because the Code provided no remedy in lieu of that in that statute.

*Third.* No writ or other legal authority issued to the sheriff, for the purpose of selling said premises, &c., &c. See bill. The paper under which the sheriff acted, does not run in the name of The State of Iowa, or State of Iowa. It is headed :

Gammel v. Young.

" IN THE MATTER OF THE 
DOWER OF ELIZABETH YOUNG. } *Report of Referees.*

" To the sheriff of said county greeting :"

Thus it does not even show what sheriff is meant. There is no *teste*, but there is what purports to be a certificate by Fred. Scarborough, clerk of the county court, under the seal of the county court. But it is not the seal of the county court that is affixed ; on the contrary, the seal is that of the District Court. The return shows Wm. T. Wynkoop to be the purchaser at eighteen hundred dollars ; and Wynkoop, intending, as it would appear, to make sure of his grab, writes a certificate that *he* bid off the within premises, for the sum of eighteen hundred dollars ; and then the sheriff states that Wynkoop paid fifteen dollars and seventy cents to apply on costs. That the sheriff could not act without a writ properly addressed to him and properly tested, is too plain a proposition, to require any argument or citation of authorities.

5. Gammel makes no extravagant prayer ; all he asks is, that an account be taken of what is due to him for moneys advanced for and used in making repairs absolutely necessary for the preservation of the estate ; that the amount of his account be declared a lien on the land ; that his purchase from three of the heirs be protected ; and that the bogus proceedings in dower be declared null and void. He does not deny Mrs. Young's right to dower, nor Mr. Wynkoop's right to get back his $15.70. He asks that all matters of dispute be settled, and the rights of the respective parties ascertained.

Now as to the points made by Judge BOOTH :—

1. To his first point, we quote the words of the bill : " And that as yet the rents and profits received by your orator, have not been sufficient to repay the said expenditures of the money of your orator."

2. The limitation mentioned in the acts relative to estates of decedents, is no bar to the claim of plaintiff. For the moneys expended during the lifetime of David Young, the complainant had an equitable lien on the estate—on the land itself ; besides that was the very agreement which Gammel had with Young. The moneys expended since, were not ex-

pended for David Young or his estate, but on the estate left by David Young, which had descended to his heirs. See the Revised Stat. 1843, 722, chap. 13. See also 4 Kent, 370, and 2 Story's Eq. Juris. §§ 1235, 1236, 1237, and 1239, and the authorities there referred to.

3. A person who held a claim against the intestate, or his widow, or his heirs at law, or against the land, has certainly a great interest in seeing that the property left by the deceased, does not pass away from the heirs by an invalid, illegal, irregular, and void proceeding.

4. The bill shows that Galloway was virtually the guardian of the estate of the minors; that all parties, including the probate court, had mistaken the position of an administrator, and had acted with Galloway, and allowed him to act both as administrator and as *virtual* guardian of the minors' estate. This is not such a great mistake, but what a court of equity will give relief.

5. The action at law has to do with the case, as it shows that Gammel understood his position, but that as *his counsel and the District Court* did not understand the difference between law and chancery as applied to his case, he was put to some delay and expense; and it accounts for delay. But Judge BOOTH is altogether wrong in fancying, that *admeasurement* is the only point in the case. Gammel bought long before the proceedings in dower. He was one of the persons whose duty it was to assign dower. Why didn't she apply to him for it? and if he should have refused, would the county court have been the proper place to sue for it? That the county court should have jurisdiction in dower, five and a half years after the decease of the husband, and after half of his heirs had transferred their title, is altogether preposterous.

6. Wynkoop had a great deal to do with the matters of account on the part of Gammel. Wynkoop at the time he made his "pretended purchase from the said sheriff, was fully aware of, and had notice of the rights and interests of your orator." He bought subject to Gammel's equities, and having done so, he must permit Gammel to enforce them. And this, whether the pretended title be good or bad.

7. The claims of Gammel have already been set up in a court of law, and the Supreme Court held, that a court of equity was the proper forum. We presume the Supreme Court will hold the same again. Gammel would have a poor show, if law said, "you must go to equity," and equity said, "you must go to law."

8. The remedy at law is not as complete, for a court of law has no right to decree an equitable lien, such as that asked for by Gammel, and recognized in 2 Story's Eq. Juris. before referred to. Gammel is obliged to come into equity by reason of the decision of the Supreme Court in the law case, and when a court of equity gets hold of a matter, it will try to do complete justice all round. *Cathcart* v. *Robinson*, 5 Peters, 264; *Oliver* v. *Pray*, 4 Hammond, 175; Story's Eq. Juris. § 72.

9. The Code gives one-third as dower, and the *remaining* estate it gives to the children; see section 1408. The law in force in 1846, gave all of the estate to the children, and left them to give the widow her dower; and if they did not, she might sue for it in the District Court, and recover it there. She ought to have asked Gammel for her dower; her right accrued in 1846, and she could have only the remedy applicable to such right. The right of dower given by the Code is altogether different, and the remedy in the Code is applicable only to it. Section 1394 of the Code is no more retrospective than section 1408 is. The land of an intestate who died subsequent to the taking effect of the Code, leaving a widow, was subject to a deduction of one-third for her dower, and the remaining two-thirds descended to the children. They did not inherit the whole, subject to dower, thereby giving them the whole, in case dower was not demanded; for the Code is imperative that the county court shall set out one-third in fee for the widow, and after this third is set out the *remainder* goes to the children. Whereas, in 1846, the whole went to the children, not two-thirds only; and if they refused to assign dower to their mother, she had her action in the *District Court*, and in that court only.

10. The only intent of section 2025 of the Code, as to de-

mand, is that a person shall not be put to the expense of a suit, unless he was unwilling to give the matter sued for. If she had applied to Gammel, she might have had her dower without any proceeding in a court at all. Her right was to have one-third of the rents and profits for life, in case dower could be admeasured. She had no right to one-third in fee, nor to one-third of what the land could be sold for.

11. The county court never acquired jurisdiction; and even if it did, the District Court has a right to inquire into the proceeding. Code, § 1576. The Court of Chancery in passing upon the rights of the respective parties, must pass upon Wynkoop's title or want of title. The assumption of jurisdiction by the county court, is an abuse which the District Court may very properly correct. The examination as to the regularity or irregularity of a proceeding, may be examined at any time in any case, where the irregularity is apparent of record, and is so bad as to make the title void.

12. Gammel's remedy at law against Wynkoop, is not ample. Gammel has only one-half by purchase, and he claims a lien for certain moneys on the whole. The Supreme Court has decided that that lien can be enforced only in equity. In order to enforce it, he has to bring into court those whom he acknowledges to be the owners, and who are the owners; but in order to have a complete settlement of the matter, he has also to bring in the doweress, and as she pretends to look to money now, instead of the land, he has to bring in the persons connected with the dower proceedings, and thus Wynkoop comes in. Besides, Wynkoop is one claiming title, and there cannot be a complete settlement of the difficulties, without his being made a party.

13. Void orders and void proceedings of the county court are always void. The county court had no jurisdiction over Gammel, or his interest in the land obtained by purchase from three heirs, and even if he had been made a party to the dower proceedings, the court could not have proceeded so as in any way to disturb his title. A person who is no party to a proceeding, is not obliged to appeal; he may attack it at any time.

*J. B. Booth*, for the appellees.

1. It does not appear by the bill, but that the advance made by Gammel to, and for the intestate, may have been paid off and discharged ; nor does he set forth and claim any specific amount due him, from the infant heirs of David Young, deceased, for improvements·and repairs, made after the decease of the intestate ; nor is there any copy of his ac-. count annexed to the bill or pleading, as required by section 1750 of the Code.

2. The pretended claim of plaintiff against the estate of intestate, cannot now in law or equity be urged at this late period, as nothing is alleged in the bill, by which it appears that the plaintiff has ever presented it, or proved it up, as required by both the Code and the law, as it existed at the time of the decease of testator.   Code, p. 210, §§ 1364, 1365, 1366, &c.   See remarks of Justices RADCLIFF and KENT, in the case of *LeGreen* v. *Gouverneur & Kemble*, 1 Johnson's Cases, 491.

3. Several causes of action cannot be united in the same petition or bill, unless all the parties thereto, are affected in the same capacities.   Code, 255, § 1751.

4. Therefore a petition or bill, with or concerning things of distinct natures against several persons, is demurrable.   2 Maddock's Chancery, 230 and 233 ; Blake's Chancery, 109, 110 and 111 ; Mitford, 169.

5. What has the validity or invalidity of the title of the defendant, Wynkoop, to do with the plaintiff's claim against the estate of intestate, or against his widow and heirs at law, since his death ?

6. What has the claim against the defendant, Galloway, as administrator of said deceased, to do with the real estate, or the admeasurement of the widow's dower ?

7. What has the action at law of the infant children of intestate, for the recovery of their rights in the real estate of which the plaintiff was in possession, to do with the question of admeasurement of dower, or the enforcement of a professed claim by the plaintiff against the estate of said intestate ?   And

8. What have the defendants, Elizabeth Young and Wyn-koop, to do with the matters of account on the part of plaintiff, and now set up by him against the estate of said deceased?

9. In the admeasurement of dower, the order confirming the report of referees, and all other orders of the county courts, if not appealed from in thirty days, shall be binding and conclusive. Code, 214, and 26.

10. The county court had jurisdiction. Code, 201.

11. The bill neither charges combination, or seeks for a discovery of any matter or thing whatever, and is, therefore, demurrable. 1 Story's Eq. Jurisprudence, §§ 458 and 458 letter *a*. Only where there are mutual accounts and a discovery wanted, will the court of equity entertain jurisdiction. See the remarks of Justice SPENCER, in the case of *Post* v. *Kimberly*, 9 Johns. 501. In which case, it will be seen that the rights and interests of infants cannot be affected.

12. If the proceedings of the county court were *coram non judice*, as alleged in the bill, then clearly the court of equity will not entertain jurisdiction, or interpose; as the plaintiff has ample remedy at law. See Code, § 2025; 2 Story's Eq. Juris. § 700, letter *a*.

13. One tenant in common, alone has a right to set up and enforce a lien, and have a lien for repairs against his co-tenant in a court of equity. 2 Story's Eq. Juris. §§ 1235, 1238.

14. If true, as alleged in the bill, that Wynkoop obtained possession of the premises in question, by "*fraud and misrepresentation*," then surely this court will not entertain jurisdiction, inasmuch as the plaintiff has ample and summary remedy at law. Code, p. 319, § 2362, and sub sec. 1.

WOODWARD, J.—One ground of the demurrer is, that the bill is multifarious, ambiguous, and uncertain; and it is said to be multifarious, because it unites several distinct complaints against several persons, who are not connected with them all in the same capacity, and who are not all concerned in all the matters of complaint. If this be so, the bill is demurrable. But the determination of the question, depends

upon the view which is to be taken of the bill. This is in-artificially drawn, and is wanting in that fullness of state-ment and clearness of object, which is desirable. There is an obscurity—almost an uncertainty—whether it is intended as a bill merely to establish a lien on the property for the money advanced, or whether with that, it unites the object of setting aside the proceedings in dower, and the sale under them, and Wynkoop's title as the purchaser. In a bill for such a lien, it was entirely proper, and perhaps necessary, to make all these persons defendants; that is, the widow, the administrator, purchaser, and the minor heirs. The com-plainant himself represents the three adult heirs. All these have a direct interest to be affected, except the administra-tor, and he represents the personalty, and was the one, to whom, *as we infer,* part of the money was in fact advanced, as he was carrying on the business of the deceased. The claim being for a lien on the estate, these persons are right-fully made parties.

To prosecute this purpose, however, it is not necessary to set aside the proceedings in dower, the sale, and Wynkoop's title *altogether,* and to hold them void. All that would be legally *requisite* is, to hold these subject to the lien. But if the purpose be to effect the above objects, in addition to es-tablishing the lien, then the bill would seem to become mul-tifarious. The proceedings in dower, and Wynkoop's title under the sale, are essentially independent of the question of lien. Gammel, so far as regards his *lien,* requires only a *priority* over them, and does not need to call for their total avoidance. But as a claimant of title to one-half of the prop-erty, he might well ask that these proceedings be held void. In this light, however, neither the administrator, nor the minor heirs, are proper parties, whilst the widow and pur-chaser would be necessary. Now, there is but one thing which seems strongly to support the idea, that the bill is brought to try the question of title between the complainant and Wynkoop, and that is the prayer of the bill, that the proceedings in dower be declared void, and to give no title to Wynkoop. The tenor of the bill seems to aim at a lien,

and although this prayer, taken literally, is too broad, yet we are inclined to think it may be limited to the above object of a lien, and to mean that the proceedings may be set aside so far as to let in the lien. This construction would give the bill a meaning consistent with the party's rights, and therefore, is the preferable one to adopt.

Another ground of demurrer is, that the complainant does not annex a bill of particulars to his petition; nor in any manner show how much of the money advanced, has been paid, if any; nor how much remains due. He implies that part has been paid, by the allegation that the rents received have not as yet been sufficient to discharge the debt. Every principle of legal procedure and of pleading, requires that the demand made by a suit, should be distinctly stated, and that a money demand should be shown with accuracy; and the rule would be the same when a lien is sought to secure that demand, for the lien must be for some definite sum. What if the court had decided to enter up a decree against the respondents, under this demurrer (they not answering), or what if it was called upon, under a default or confession, to decree that the administrator pay the amount due to petitioner from the proceeds of the sale to Wynkoop, for what sum could it grant a lien, or decree a payment? The bill is defective in this respect. But this view does not stand merely upon the technical grounds suggested in the demurrer, but upon the broader base, that the plaintiff himself alleges that he was to be repaid from the property by its rents and profits; that these have not *yet* been sufficient to remunerate him; and that he has settled with the administrator, and accounted for the rents; and yet he makes no statement of the result of that accounting, nor of how much he has received. On the basis of his own bill, then, without referring to the rule in pleading, he should make a showing of these matters.

The bill is defective in clearness on the question, also, as to when and to whom, these advancements were made, which were made after the death of Young. Perhaps it might be inferred reasonably, that they were to the administrator, who was carrying on the business. But there is no cer-

tainty of the correctness of this inference. And whether the money was advanced, or the improvements made, before or after the complainant went into possession under his lease; whether before or after he purchased one-half of the property from the adult heirs, is left entirely uncertain. The extent and manner of complainant's remedy, as well as the question whether he has a remedy of the nature sought, might be much affected by these considerations. And were we obliged to determine under the present aspect of the case, whether he is entitled to a lien, we should be compelled to do it under a view the most unfavorable to the complainant. But it is sufficient to leave this question, until it may be presented under a clearer statement of facts, and to sustain the demurrer upon the points in which the bill has been before stated to be deficient. This reverses the decision of the District Court upon the allegation of multifariousness, and affirms its decision upon the allegation of ambiguity and uncertainty. Upon the foregoing grounds, the judgment of the District Court is affirmed.