EDWIN GINN *vs.* WILLIAM F. ALMY, & others.
SAME *vs.* ARGENTA MINES COMPANY & others.
SAME *vs.* FRANK S. WOOD & others.

Suffolk. March 5, 1912. — July 1, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DECOURCY, JJ.

*Equity Jurisdiction,* Rescission, To reach and apply equitable assets, Negligence barring suit. *Fraud. Deceit. Equity Pleading and Practice,* Bill, Trial by jury, Supplementary process, Master's report, Appeal, Decree. *Constitutional Law,* Right of trial by jury. *Writ of Protection. Husband and Wife. Corporation. Words,* "Debt."

A bill in equity against three defendants contained averments in substance that the plaintiff, by reason of his reliance upon representations by the defendants acting in concert as to material facts peculiarly within their own knowledge bearing upon the value of a certain mining property, was induced to pay to the defendants large sums of money for shares of the capital stock of a corporation, of which the defendants were officers, organized for the development of the property, and that such capital stock had no intrinsic or market value; that, relying upon other representations of the defendants as to the price for which certain other mining properties could be purchased, the plaintiff was induced to pay to the defendants other large sums of money represented by the defendants to be necessary for such purchase, and in return received capital stock in two other corporations organized for the purchase and development of such properties; that the representations upon which the plaintiff relied in both instances were false and were known to the defendants to be so, and that the defendants appropriated large portions of the money so paid by the plaintiff for their own enrichment. The plaintiff tendered to the defendants the capital stock he had received in the transactions and sought by the bill to have the transactions rescinded and the money paid by him restored to him. The defendants demurred to the bill. *Held,* that on the averments of the bill the plaintiff was entitled to relief.

The mere fact, that, in a bill in equity against several defendants in which the

plaintiff seeks a rescission of certain transactions with the defendants which he alleges he was induced to enter into by fraud practised upon him by all of the defendants acting in concert, there are included averments as to transactions separate in point of time, as well as some demands for which, if they stood alone, only a court of law could give remedy, and alternative prayers for relief which are inconsistent with each other, does not render the bill multifarious where it appears that, because of a connection between the various fraudulent acts owing to a mercantile association of the parties, such general right of rescission and of recovery can be enforced by the court of equity without making the defense burdensome.

A claim for the repayment of money on the rescission of a sale is a "debt" within the meaning of that word as used in R. L. c. 159, § 3, cl. 7.

In a suit in equity against two defendants in which the plaintiff, by reason of fraud alleged to have been practised upon him by one defendant, seeks a rescission of certain transactions with that defendant and a repayment of sums of money paid by him to that defendant in such transactions, and in which the plaintiff joins the other defendant in whose hands he alleges there is property of the first defendant which cannot be reached to be attached in an action at law and which, under R. L. c. 159, § 3, cl. 7, he seeks to have applied in payment of the amount alleged to be due to him from the first defendant, neither defendant has a right to a trial by jury, and a denial of motions by them for jury issues is a matter of judicial discretion.

A writ of protection should not be issued at the request of the defendant in a suit in equity who is in another State, exempting him, while in attendance in this Commonwealth for the purposes of the trial of the suit, from arrest under R. L. c. 168, § 1, upon supplementary process issued under R. L. c. 167, § 80, in the suit on trial.

. In a suit in equity against a husband and a wife it appeared that certain sales of shares of corporation stock by the husband to the plaintiff should be rescinded and that money paid in the transactions by the plaintiff to the husband should be repaid to the plaintiff, that previous to the sale the husband had conveyed directly to his wife a large number of shares of which those sold to the plaintiff were a part, the remainder being sold to another person, that the proceeds of the sale to the plaintiff were placed in the wife's possession and that she had received the shares of stock and, at the time of the commencement of the suit, held the proceeds of their sale for the benefit of her husband; and that she also held a second block of shares which she had received directly from her husband as a gift. *Held*, that the suit could be maintained against the wife only under R. L. c. 159, § 3, cl. 7, to reach and apply in satisfaction of the debt due to the plaintiff from her husband the second block of shares and the proceeds in her possession from the sale of the first block of shares.

After a full hearing of a suit in equity before a master upon issues which, although not so stipulated in writing, are expressly understood by the parties and by the master as embodying in substance the entire controversy within the pleadings, and after the master has filed a report containing a statement of the issues that were so understood to have been open at the hearing and no objection or exception to such a statement in the report has been taken, it is too late for one of the parties, by an objection and an exception to the master's refusal to report certain facts, to raise an issue not understood to have been open at the hearing.

If the owner of shares of stock in a corporation owning and developing a mine in

a foreign country, for the purpose of inducing another person to purchase some of his shares, makes representations which he knows to be false as to the amount, character and value of the ore in the mine, and a purchase is thus induced, such representations are not mere estimates or seller's talk, and upon discovering the fraud the purchaser by a suit in equity against the vendor may have the sale rescinded and the money he paid for the shares repaid to him.

In a suit in equity for the rescission of certain purchases of shares of the capital stock of a mining corporation and the repayment of the purchase price thereof, it appeared that the defendant, who was the president of the corporation and, except for shares held by certain persons to enable them to qualify as directors, owned all of its capital stock and at all times was its directing personality, made fraudulent misrepresentations to the plaintiff as to the character and value of the mining property and thus induced him to purchase shares, that the plaintiff then became a director and thereafter purchased some further shares called "treasury stock," which he was led to purchase because he still was influenced by the same misrepresentations of the defendant and also by further misrepresentations by the defendant that such "treasury stock" was owned by the corporation and that the purchasing of it would furnish to the corporation money needed for operating expenses. The other directors did not participate in, or have any knowledge of, the fraud of the defendant. *Held*, that the mere fact, that such later purchase of shares was made by the plaintiff after he had become a director, did not as a matter of law preclude him from maintaining the suit.

In a suit in equity against the president of a mining corporation to recover amounts of money paid by the plaintiff in certain transactions in shares of the capital stock of the corporation, if it appears that the plaintiff, after he had purchased some shares from the defendant because of false representations made to him by the defendant, also purchased shares from other persons by reason of the same false representations of the defendant, and it does not appear that the defendant in any way profited by the purchases from such other persons, the plaintiff cannot recover the amounts paid in such later purchases.

Where in a bill in equity against a corporation and its president the plaintiff avers that, by reason of deceit practised upon him by the president for personal profit, he was induced to purchase shares of stock in the corporation which were owned by the president but were denominated "treasury stock" of the corporation, the plaintiff, although upon a hearing it appears that the proceeds of some of the shares so purchased by the plaintiff were paid into the corporation's treasury by the president, cannot have relief against the corporation to compel it to repay to him upon a rescission of the purchases what it thus received from its president.

The relief to be given to the plaintiff in a final decree in a suit in equity cannot be greater or different from that warranted by the facts alleged in the bill at the time of the decree, although it appears that facts found upon a hearing of the suit are such that more extended or different relief might be given if the facts so found were alleged in the bill.

Where, upon the reservation of a suit in equity for determination by this court, it appears that, as to some defendants who had not appeared at any time in the proceedings and against whom decrees had been entered that the bill be taken *pro confesso*, the bill should be dismissed, a decree will be ordered dismissing the bill as to them without costs.

In a suit in equity it appeared that the defendant had represented to the plaintiff, as the amount needed to purchase certain mining property which the plaintiff

and the defendant desired, an amount much greater than what was needed for that purpose, that the defendant knew the representations to be false, that the plaintiff relying thereon paid to the defendant the amount stated by him to be needed and the defendant used some of the amount in purchasing the property, organized a corporation to operate it, delivered some of the shares of stock of the corporation to the plaintiff and himself appropriated so much of the money as was not needed for the carrying out of the transaction. Subsequently the corporation was consolidated with another in which the plaintiff had been induced to invest in the same way, and there were issued to him shares in the consolidated corporation which represented the shares originally issued to him in both of the corporations. Upon discovering the fraud by which the defendant had procured money from him, the plaintiff tendered to the defendant the shares of stock in the consolidated corporation, and in the suit sought to rescind his transactions with the defendant as to both of the original corporations and to recover the sums he had paid to the defendant. *Held*, that the relief sought should be granted.

THREE BILLS IN EQUITY, the first of which was filed in the Supreme Judicial Court on March 11, 1908, and subsequently was amended. The second and third bills, as stated in the opinion, have become immaterial.

The first suit originally was brought in the name of one Edward K. Robinson as assignee for Edwin Ginn, the real party in interest, who afterwards by amendment was substituted as the plaintiff. The defendants were William F. Almy, Lillian W. Almy, Frank S. Wood, George R. Angus, the Argenta Mines Company, the Alcimento Mines Company, and the Alveoro Mines Company. The principal allegations of the bill were substantially as follows:

In the summer of 1904 the defendants William F. Almy, Wood and Angus, represented to the plaintiff that the Argenta Mines Company, a corporation with $2,000,000 of capital stock, had been organized by them in April, 1902, for the purpose of purchasing and developing a copper, gold and silver mine in British Columbia; that at that time they had, "blocked out and in sight" and practically ready for shipment as soon as transportation facilities could be furnished, ore worth more than the par value of the stock, when in fact the surface indications upon which the mine had been purchased and promoted in 1902 had "pinched out" shortly after development began, so that in the summer of 1904 the mine was a demonstrated failure, as the defendants well knew. The plaintiff then was induced to purchase "treasury stock" for $50,000. At the same time the same defendants represented to the plaintiff that they were able to get at very much less than the

real value certain other shares of the corporation's stock from the persons who owned it originally, having acquired it as part of the purchase price of the property paid to them by the corporation. In fact, such stock did not belong to the original owners but belonged to or was held in trust for one or all of the defendants. Relying on such and other misrepresentations of the defendants the plaintiff purchased a large number of shares of stock in the corporation, paying therefor large sums of money which were appropriated by the defendants for their own use.

As to the Alcimento Company and the Alveoro Company, the substance of the allegations of the bill in the first suit was that the plaintiff agreed with the principal defendants to furnish $80,000 for the purpose of buying two placer gold mines in California; that two corporations were to be formed, to which respectively, the property was to be conveyed when purchased, that the capital stock of the corporations was to be divided, after using part in payment for the properties, between the promoters and the capitalists in the proportion of three to promoters and five to capitalists; and that the defendants fraudulently misrepresented to the plaintiff that the amount of the purchase price was larger than it was, and appropriated to themselves a large part of the $80,000 furnished by the plaintiff for the purpose of buying the two properties.

Other allegations in the bill as to other defendants are described in the opinion.

The bill contained offers of tender of the shares of stock sold to the plaintiff, three prayers for injunctions *pendente lite*, and prayers (4) for a rescission of all the transactions described and the repayment to the plaintiff of all sums paid out by him thereon, with interest; (5) "that as to any and all the transactions hereinabove referred to, the said personal defendants may be found to have stood in a fiduciary relation to the plaintiff's assignor, that said personal defendants may be held to account for all sums received by them, and the plaintiff decreed to recover, and execution issue therefor, all sums appropriated by them to their own use, contrary to the duty imposed upon them by such fiduciary relationship;" (6) "that the amount of stock of the defendant corporations held by the personal defendants, or any of them, may be ascertained or determined and proper decrees made for the application of the

same to the payment of the plaintiff's claim;" (7) that, "if, as to any or all the transactions hereinabove referred to, the plaintiff shall be found not entitled, for any reason, to a rescission, that, in the alternative, his damages by reason of the wrongs suffered may be assessed and execution issue therefor," and (8) for general relief.

The substance of the further proceedings and of the facts found by the master is stated in the opinion.

The cases were reserved for determination by the full court.

G. W. Anderson, (E. H. Ruby with him,) for the plaintiff.

F. H. Stewart, (W. H. Rand, Jr., with him,) for the defendants Almy.

BRALEY, J. The first bill of complaint as finally amended appears to have been treated by the parties as stating substantially all the grounds upon which the plaintiff relied for equitable relief, and the remaining suits in which neither William F. Almy nor his wife, Lillian W. Almy, are defendants seem to have been instituted merely as matter of precaution. We shall follow the order adopted by them, and confine our discussion of the questions raised by the record as being covered by the pleadings in the first case. The bill having been taken for confessed against the defendants, the Alcimento Mines Company, and the Alveoro Mines Company, the remaining defendants, William F. Almy, Lillian W. Almy, Frank S. Wood, George R. Angus and the Argenta Mines Company demurred to the original bill, which although brought in the name of one Edward K. Robinson to whom the causes of action had been assigned, was amended after the demurrers were filed, by the substitution of the present plaintiff, Edwin Ginn, who was the assignor. By this amendment the second and third grounds, which are common to all the demurrers, were eliminated, leaving for decision the other causes assigned. The defendants Wood, Angus, and the Argenta Mines Company neither appeared at the argument nor filed a brief, yet if the demurrer of William F. Almy is sustained they are entitled to the benefit of the decision in so far as they relied on similar objections to the sufficiency of the bill.

It is broadly contended, that no case is stated for relief in equity, and that the plaintiff's remedy at law is plain and adequate. The second paragraph of the bill alleges, that "in all the transactions and frauds hereinafter referred to the said Wood and Angus have

acted in concert and conspiracy with the said Almy, and these three have divided the proceeds of the moneys hereinafter complained of according to agreements made among themselves." It will be convenient in disposing of the demurrers to refer to them as the defendants, for the plaintiff constantly avers, that through their instrumentality he had been wronged and defrauded. The allegations of the third, fourth, fifth, sixth and seventh paragraphs when relieved of redundancy charge the defendants, who were officers of the corporation, with making various material, false and fraudulent representations concerning the value of the property and of the shares of the capital stock of the Argenta Mines Company for the purpose of inducing the plaintiff to buy, and that in reliance upon these representations he invested large sums of money in the purchase through the defendants of the stock of a mining enterprise having no intrinsic or commercial value. The eighth, ninth and tenth paragraphs relate to the acquisition by the defendants and the plaintiff of certain gold placer mining properties described as the Alcimento Mines Company and the Alvero Mines Company. It is charged, that through the false representations of the defendants that the ownership and control of these properties could be acquired upon payment of a stipulated sum in money, and one fifth of the capital stock of a corporation to be organized to purchase the Alcimento mine and two fifths of the capital stock of the corporation which was to be formed to take over the Alveoro mine, the plaintiff, believing the representations to be true, paid to the defendants amounts largely in excess of the purchase price for which they had bought either property, and became an owner of a large part of the capital stock. In consummation of this fraudulent scheme it is further charged, that the defendants in each of these transactions appropriated to their own use a large portion of the money received from the plaintiff exclusively for the purpose of effecting the purchase.

It would seem to be alleged with sufficient certainty that by a series of misrepresentations the defendants acting jointly obtained from the plaintiff large sums of money for worthless stock, and for investment in mining properties, which they appropriated in part for their own enrichment. The representations on which the plaintiff relied are shown by the averments to have been peculiarly within the knowledge of the defendants, and the pecuniary damage

which he has suffered is aptly alleged to have been induced by
their fraud. It is no doubt true as the defendants urge, that the
plaintiff upon discovery of the deceit could have affirmed the con-
tracts, and sued in tort for damages. *Stewart* v. *Joyce*, 201 Mass.
301, 310, 311, and cases cited. But he offers to return the stock,
and by reason of the fraud practised upon him he may resort to
equity to have all the transactions set aside, and if recission is
granted full relief for a return of the money wrongfully obtained
can be decreed. *Smith* v. *Everett*, 126 Mass. 304. *Davis* v. *Pea-
body*, 170 Mass. 397. *Rackemann* v. *Riverbank Improvement Co.*
167 Mass. 1. *Long* v. *Athol*, 196 Mass. 497. *Stewart* v. *Joyce*,
201 Mass. 301. *Grymes* v. *Sanders*, 93 U. S. 55.

The plaintiff if he fails to obtain relief in one form is not barred
from such relief as may be applicable to the case stated by the bill.
*Gerrish* v. *Towne*, 3 Gray, 82, 86, 87. *Nudd* v. *Powers*, 136 Mass.
273. *Colton* v. *Ross*, 2 Paige, 396. *Shields* v. *Barrow*, 17 How.
130. The prayers, however, which ask that if the plaintiff cannot
rescind, the defendants may be decreed to have acted in a fidu-
ciary capacity, and that an accounting be ordered of all sums
appropriated by them to their own use, or that his damages may
be assessed, and execution therefor awarded, are doubtless incon-
sistent. The defendants are not trustees or agents holding property
for his benefit for which they should account, and relief in damages
if rescission fails is based on affirmance, and not upon disaffir-
mance of the contracts. *Price* v. *Minot*, 107 Mass. 49. *Dunphy*
v. *Traveller Newspaper Association*, 146 Mass. 495. But the bill
is not rendered multifarious even if it contains inconsistent alter-
native prayers, and transactions separate in point of time have
been joined, or demands exclusively remediable at law and over
which a court of equity has no independent jurisdiction have been
inserted. *Ames* v. *King*, 9 Allen, 258. *McCabe* v. *Bellows*, 1
Allen, 269. *Mayne* v. *Griswold*, 3 Sandf. 463. *Miller* v. *Jamson*,
9 C. E. Green, 41. *Gammel* v. *Young*, 3 Iowa, 297. We have said,
that the purchases of Argenta stock, and of an interest in the Alci-
mento and Alveoro properties are but parts of what is alleged to
have been a concerted attempt to defraud, and if the money thus
obtained varies in amount according to the particular transaction,
the plaintiff asks for the enforcement of a general right of recission
and recovery, where from the mercantile association of the parties

the fraudulent acts are alleged to have been so connected that the defendants in making their defense are not burdened by the joinder, or the court prevented from decreeing appropriate relief. *Bliss* v. *Parks*, 175 Mass. 539, 543. *Von Arnim* v. *American Tube Works*, 188 Mass. 515, 520. *Andrews* v. *Tuttle-Smith Co.* 191 Mass. 461, 466, 467.

The bill also seeks under R. L. c. 159, § 3, cl. 7, to reach and apply in satisfaction of the plaintiff's demands property in the possession of the defendant Lillian W. Almy alleged to belong to her husband, and the corporate defendants are also joined under averments that Wood, Almy and Angus possess large holdings of stock in these companies, which cannot be reached on attachment or execution at law. The demurrants construe the frame of the bill as not setting forth a debt within the purview of the statute. But in the construction of a similar provision in the Gen. Sts. c. 113, § 2, Chief Justice Gray said in *Schlesinger* v. *Sherman*, 127 Mass. 206, 208, "the equitable jurisdiction conferred by this statute, and invoked in the bill, does not depend upon the nature of the plaintiff's debt or cause of action, but upon the existence of some property or right which cannot be come- at to be attached or taken on execution at law, as security for, and in satisfaction of, the plaintiff's debt against the defendant." The amounts involved become upon recission liquidated claims founded upon an obligation of repayment by which the defendants are bound, and for which payment can be exacted by the plaintiff. This is sufficient to satisfy the requirements of the statute. *Woodbury* v. *Sparrell Print*, 187 Mass. 426, 428, 429.

It is unnecessary to refer specifically to objections which have not been argued or mentioned in the briefs, and having examined all the causes assigned we find no error in the decree of the single justice * who ordered the demurrers overruled.

Upon the coming in of the answers issue was joined, and all the defendants moved that issues of fact be framed for trial to a jury. The denial of these motions, while reviewable by the full court, was discretionary with the single justice,† whose decision should not be reversed. It is not alleged in the eleventh paragraph of the bill that the transfer of money, or of stock, by either of the defendants

---

* *Rugg,* C. J.                    † *Braley,* J.

William F. Almy, Wood and Angus to the defendant Lillian W. Almy was in fraud of creditors, and the cases of *Powers* v. *Raymond,* 137 Mass. 483, and *Merchants' National Bank* v. *Moulton,* 143 Mass. 543, where it was sought to have fraudulent conveyances of this character set aside and issues were framed for a jury, are not in point. The present case being grounded on the right of recission is governed by *Parker* v. *Simpson,* 180 Mass. 334, and *Lascelles* v. *Clark,* 204 Mass. 362, 377, where it was decided that the allowance of such motions, if the suit comes within the general equity jurisdiction of the court, is matter of discretion.

The cases after the demurrers and motions had been disposed of were consolidated, and the parties tried the merits before a master.* The plaintiff has waived his exceptions to the report, and before taking up the exceptions of the defendant William F. Almy, it will be convenient to determine the questions raised by the appeals from certain interlocutory orders, and to dispose of the exceptions of Mrs. Almy, and to settle finally the question of the liability of the defendants Wood and Angus.

By an order † entered without notice to the plaintiff, William F. Almy, who is described in the bill as residing within the Commonwealth, but who seems to have remained in a sanitarium in the State of New Hampshire from the inception and during the progress of the suit, was granted a writ of protection exempting him from arrest on civil process while in attendance as a party, and during a reasonable time in going to the place of trial and in returning to his foreign residence. The modification of this order ‡ on application of the plaintiff for supplementary process under the provisions of R. L. c. 159, § 8, and c. 167, § 80, permitted his arrest upon process issued at any time during the pendency of the suit if he was domiciled here, or if a non-resident, while he was within the Commonwealth. *Paine* v. *Kelley,* 197 Mass. 22. The defendant's grievance is, that after the modification, he preferred not to expose himself to the chance of arrest, and hence he had been deprived of the opportunity to appear and give his testimony before the master. He has not directed our attention to any principle of law which supports this contention. The writ issues to protect a party from arrest in other suits which have been or may

---

* George L. Huntress, Esquire.    † By *Loring,* J.    ‡ By *Loring,* J.

be instituted whereby his attendance while his case is on trial might be greatly embarrassed or wholly prevented. *Thompson's case,* 122 Mass. 428, 429, and cases cited. The privilege is not dependent upon the writ. It is only evidence by which the arresting officer is informed that the defendant is not subject to process. *Ex parte M'Neil,* 6 Mass. 245; 6 Mass. 264. *Chaffee* v. *Jones,* 19 Pick. 260, 267. The defendant does not argue that his property could not have been attached pending the suit, yet the right of arrest where the defendant intends to leave the Commonwealth so that execution, if obtained, cannot be served upon him, is expressly given by our statutes. R. L. c. 168, §§ 1, 2. The defendant had the right to appear and contest the plaintiff's demands. Indeed, it is plain from the master's report, that the plaintiff cannot prevail except upon satisfactory proof of this defendant's material misrepresentations. But neither the defendant's property nor his person were exempt from legal process, by the use of which payment of the amount the plaintiff might recover against him could be secured. It also is manifest that the defendant during convalescence or after recovery was afforded every reasonable opportunity until the hearings before the master were finally closed, to give evidence either in person or by deposition.

The denial * of the motions to recommit the master's report, and of the petition for leave to take further testimony, and for a rehearing, having been within the discretion of the single justice should be affirmed, and we recur to the report. *American Stay Co.* v. *Delaney,* 211 Mass. 229. *Crosier* v. *Kellogg,* 210 Mass. 181.

The evidence before the master not having been ordered reported, the usual rule applies, and his findings of fact must be deemed to be final unless from the report itself they appear to have been unwarranted. *Taber* v. *Breck,* 192 Mass. 355, 360.

It is found, that "the block of four hundred thousand shares" of the capital stock of the Argenta Mines Company "although put in his wife's name, belonged to Almy, and that Mrs. Almy held it, and all proceeds realized from its sale, for the benefit of the defendant Almy." † The plaintiff by the third amendment to

---

* By *De Courcy,* J.

† The entire findings of the master as to 500,000 shares of stock, part of

the bill, sought by the allegations, that "one or more of the other personal defendants acted as the agent or agents" of this defendant in inducing him to purchase two hundred thousand shares of this stock, the remainder of which was sold to one Newton, to charge her as a participant. If relieved by the master's findings from these allegations, yet under the sixth prayer the proceeds of these shares in her possession, and the additional one hundred thousand shares, even if they were received and are held by her as a gift from him, remained the property of her husband, which can be applied in equity to the satisfaction of his debts and liabilities. R. L. c. 153, § 3. *Hawkins* v. *Providence & Worcester Railroad,* 119 Mass. 596, 599. *Brown* v. *Brown,* 174 Mass. 197, 198, 199. *Atkins* v. *Atkins,* 195 Mass. 124. See St. 1912, c. 304. The bill as to this defendant can be maintained for this purpose only, and her exceptions to the report should be overruled.

The defendants, Wood and Angus, are also exonerated by the master from all participation in any attempt to mislead, deceive and defraud the plaintiff as averred in the original bill or in the amendments. It is urgently pressed by the plaintiff, that after his purchase from Almy of the shares of "outside stock" and of the shares of "treasury stock" of the Argenta Company described in the bill and in the first amendment, he was induced through the deception practised upon him by these defendants as stated in

---

which the plaintiff purchased, were that they were transferred from Almy to his wife, "and new certificates issued to Mrs. Almy, one certificate for four hundred thousand shares, and one for one hundred thousand shares. Transfer was not made through any third person or corporation. . . . At this time Almy and his wife were residents of Massachusetts, and the transaction occurred in Massachusetts. Mrs. Almy claimed that she bought the block of four hundred thousand shares of stock and paid for it, but declined to state how much she paid. Her evidence, if credited, would justify me in finding that she paid a few thousand dollars. She claimed, however, that the one hundred thousand shares were presented to her by her husband as a gift. It does not seem to me material or important whether Mrs. Almy did or did not pay her husband any money for any of the stock, but I am not satisfied, upon the evidence, that she paid him anything. I find as a fact that the block of four hundred thousand shares, although put in his wife's name, belonged to Almy, and that Mrs. Almy held it, and all proceeds realized from its sale for the benefit of defendant Almy. As for the one hundred thousand shares, it was probably understood by both that they belonged to Mrs. Almy as a gift from her husband."

the seventh paragraph to purchase more shares of the company, which are referred to in the report as the "McLaughlin and Pond stock."* The general finding, that the plaintiff bought these stocks because he could get them "at a price which he believed as less than their actual value," and that "this was the only reason which actuated the purchase," and the particular finding, that neither defendant made any misrepresentations which induced the plaintiff to buy, or intentionally misled him as to the price for which the stock could be procured, is a sufficient answer to this contention, without further recitals from the master's exhaustive review of the details. The plaintiff also cannot recover either in whole or in part the profit shared by the defendants in the sale of the Pond stock. The defendant Angus entered into no contractual relations whatever with the plaintiff. If he was personally benefited because he received a larger price from the plaintiff than that for which under the option he procured the stock from Pond, there was no prior agreement or secret understanding with Wood, who acted for the plaintiff, that a profit was to be

---

* These were shares of stock in the Argenta Mine Company. As to them the master's findings, besides those stated in the opinion, were in substance as follows: The McLaughlin shares were owned by the defendant Wood. The defendant Angus was a "social friend as well as a business associate of the plaintiff." The plaintiff frequently asked Angus if he knew where he could "buy some more twenty-five cent stock," meaning shares of stock of the Argenta Mines Company. Angus reported one conversation to Wood. Wood said he would sell his shares, and they were sold through Angus, it not being disclosed that they were Wood's. "At any time in 1905 and 1906 the plaintiff would have bought stock from Wood and Angus for twenty-five cents if he could have got it."

The "Pond stock" was 130,000 shares owned by one Pond, who told Angus that he was in financial difficulties and wanted to sell so as to net him about $30,000. Angus told Wood, and, asked by Wood to get a definite offer from Pond, finally got Pond to agree to sell for $25,000 and told Wood Pond would sell for twenty-five cents a share. Wood saw the plaintiff and sold the stock to him for that price, and paid the entire $32,500 to Angus. Angus paid $25,000 to Pond and afterwards divided his $7,500 profit with Wood "voluntarily in recognition of Wood's services, and because of favors which Wood had done him in the past, and because of Wood's need of money to support his family." There was "no prior agreement as to this division of profits . . . nor did Wood know that Angus was making a profit on this stock until after the transaction had been closed." Angus had no talk with the plaintiff as to the transactions.

realized for their joint advantage. It is expressly found, that until the transaction had been closed, and the stock transferred, Wood was ignorant of the price Pond was to receive, and if as the master further finds, Angus then for charitable reasons voluntarily shared the profit equally with Wood, the latter's acceptance of the money was not a fraud perpetrated upon his principal. *Malden & Melrose Gas Light Co.* v. *Chandler,* 209 Mass. 354. As to these defendants the original bill, and the bill as amended cannot be maintained.

Of the individual or personal defendants William F. Almy alone remains, to whom we shall now refer as the defendant. The questions for decision are, whether any of his voluminous and multiform exceptions to the original report, and of the eight exceptions to the supplemental and correcting report should be sustained, and if they are overruled, what is the nature and measure of the plaintiff's relief against him.

We have considered each of the exceptions to the supplemental report which was intended to correct certain verbal and technical errors appearing in the original report, and being unable to discover that the defendant has been prejudiced, these exceptions are overruled without further comment.

It is said in *O'Brien* v. *Keefe,* 175 Mass. 274, 276, that exceptions to a master's report "is the act of appealing from rulings appearing of record, and nothing more." The master states that in accordance with the rule he prepared and furnished counsel with a draft copy of the report, and they were notified when and where they could attend and suggest such alterations as they might deem important. He further reports, that in compliance with the notice counsel came before him, and proposed certain alterations which he duly considered, and settled the final draft to which he appended the defendant's objections, which comprise the exceptions in the record. The action of the master must be taken as a denial of the defendant's requests for findings of fact and for rulings of law, as well as for a report of portions of the evidence and of additional facts which the defendant upon his view of the probative effect of the testimony considered to be material. The burden is on him to point out in the report such errors as will avoid the master's conclusions. *Sparhawk* v. *Wills,* 5 Gray, 423, 431.

It must be assumed, that more than one inference might have

been drawn from the evidence, and the exceptions wherever they rest upon the contention that the material findings are unsupported by the entire evidence, and that fraud and deceit were not proved, cannot be sustained. The exceptions that the monetary amounts stated were assessed as compensatory damages, and are excessive also must fail. The master did not assess damages for reasons hereinafter given. Nor are the exceptions that upon all the evidence, or upon the recitals in the report the plaintiff could not rescind, tenable. The master did not pass upon this question. No rulings of law were made, but he only determined and reported the facts, and in each instance it was left for this court to decide whether the facts were sufficient to enable the plaintiff to maintain the bill. The master while not required to report evidence which would substantiate the defendant's contentions, has reported as to each particular transaction enough of the evidence to present clearly and fully the questions of law, and he was not required to do more. *Parker* v. *Nickerson,* 137 Mass. 487. *East Tennessee Land Co.* .v. *Leeson,* 183 Mass. 37. It also was not improper for him to elide from his report the words inserted in the draft report when referring to the defendant's requests, that "in my opinion all the facts material to the case have been found and reported." If as we have said, he has reported upon all matters referred to him, he could not be compelled or required to adopt the defendant's views as to the force and materiality of the oral and documentary testimony, or the coherency of the varying statements of the witnesses. The master's finding, and the failure to argue the question, disposes of the issue of laches raised in the answers.

The inquiry whether the plaintiff by his conduct affirmed the various purchases of stock after he had ascertained that he had been defrauded is also presented by the exceptions. *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 587. *Hill* v. *Hall,* 191 Mass. 253. It is doubtful if the plaintiff's attempt to gain control of the corporate management of the company, even if as the defendants claim, he sought the aid of the courts, would bar the present bill. *Raphael* v. *Reinstein,* 154 Mass. 178. The answers do not aver that his efforts were put forth after knowledge of the fraud, and if he acted in ignorance of the deception he would not be precluded from recission. *Raphael* v. *Reinstein,* 154 Mass. 178. *Browning* v. *DeFord,* 178 U. S. 196; 44 Law. Ed. 1033, and cases

cited in note. But the decisive answer to this and kindred excep-
tions is, that the questions were not raised before the master.
In the opening paragraphs of the report he carefully defines the
issues which the parties actually tried before him, and no specific
exceptions have been taken to his statements. It is too late after
a fair and full trial before a master upon issues which if not stip-
ulated in writing by the parties are expressly understood without
objection as embodying in substance the controversy within the
pleadings, for the defeated party to contend upon exceptions, that
the report should be set aside because it was possible to have raised
pertinent questions, to which no reference is made. *Kennedy* v.
*Welch*, 196 Mass. 592. *Braman* v. *Foss*, 204 Mass. 404. The con-
troverted issues which with their consent the master considered the
parties were litigating, and he was to decide are as follows, "The
plaintiff alleges and has offered evidence tending to prove that he is
entitled to a decree which shall give him the right to rescind all the
transactions with the defendants as to the purchase of certain large
blocks of the capital stock of the . . . Argenta Mines Company,
on the ground that he was induced to make such purchases, and
pay for said stock, solely by reason of the false and fraudulent
representations of the three defendants Almy, Wood and Angus,
as to the value of the Argenta mine, which representations were
known by the said three defendants to be false at the time they
were made; that said false representations were made for the
purpose of deceiving and defrauding the plaintiff, and that the
plaintiff, relying solely upon said false and fraudulent represen-
tations and statements, bought the . . . stock and paid large
sums of money therefor." The right to relief in the transactions
relating to the purchase of an interest in the Alcimento Mines
Company and the Alveoro Mines Company, rests upon similar
reasons. "In their defense against the plaintiff's first contention,
the defendants denied all the plaintiff's material allegations, and
offered evidence tending to prove that the statements made to the
plaintiff with regard to the Argenta mine were true and accurate."
But if "not true and accurate" the statements "were nevertheless
made in good faith upon information received from others, upon
the accuracy of which the defendants relied, and had the right to
rely," and that there was no intention to deceive the plaintiff who
"did not rely upon any statements made by the defendants or

either of them," but acted upon the same information relied on by the defendants as to the value of the mine. In defense of the charges relating to the other mining properties the defendants denied all of the material allegations of the plaintiff, and offered evidence tending to prove that the plaintiff "did not buy any proportion or interest" in these properties, but bought "a definite amount of the capital stock," and that "no false statements were made to the plaintiff with reference" to either property.

If there was an alternative prayer for the assessment of damages, if the right to rescind was not established, the master has not assessed damages, which under our decisions would have to be grounded upon the familiar rule, that the plaintiff would be entitled to the difference between the actual value of what he received, and what that value would have been if the defendants' representations had been true. *Thomson* v. *Pentecost,* 206 Mass. 505, 512; *S. C.* 210 Mass. 223. It is only upon the basis of rescission that the plaintiff can have a decree, for the bill cannot be maintained for the assessment of damages to be ascertained as in an action of deceit.

If thus far the discussion has been confined to the principal grounds of complaint, we have examined all of the exceptions * not specifically noticed and are of opinion that none of them are meritorious.

It is the defendant's contention, if his exceptions fail, that upon the report, with such inferences therefrom as may be properly drawn by the court, the bill as to him should be dismissed. But this result is impossible unless the explicit findings, which seem to us to be consistent and susceptible of but a single interpretation, are arbitrarily disregarded. The defendant, a trained mining engineer of recognized ability and much experience, organized the corporation described in the bill and in the report as the Argenta Mines Company, with a capital stock of $2,000,000, divided into two million shares each of the par value of one dollar. By vote of the directors, who held fifty shares to qualify them for their

---

* The defendant William F. Almy stated as the ground for his exceptions to the master's report that they were "for the reasons set forth in his objections" theretofore filed, referring by number to seventy-seven principal objections, one of which had two hundred and two subdivisions. These objections covered thirty-four pages of the printed record.

office, the remainder of the stock was issued to him, and under the terms of the prospectus and subscription sheet prepared and circulated by the defendant previous to the organization of the corporation, he had proposed, that he should hold in reserve five hundred thousand shares which the directors were to have the right to sell, and to use the proceeds in working the mine and in developing the property. Yet he avers in his first answer to the plaintiff's bill as amended, that with the exception of fifty shares the entire capital was issued to him absolutely in full payment for the property. The master, however, reports, that while there was no recognized distinction on the books of the company, these shares were styled "treasury stock" and the remaining shares as "outside stock," and from time to time the defendant voluntarily furnished from his holdings the entire amount of treasury stock, and the money realized from its sale was used for the benefit of the company. The defendant sold stock at different prices to a number of purchasers, and at the request of the plaintiff an interview followed, which resulted in the purchase by, and transfer to him, of two hundred thousand shares of the outside stock standing in the name of Mrs. Almy, and one hundred and twenty-five thousand shares of treasury stock. The plaintiff contends, that in reliance upon the false pretenses of the defendant he was induced to make the investment. The defendant stated to him approximately the cost of mining, and the profits on each ton of ore, and the cubical contents of the ore bodies or veins as shown by the report of a mining engineer whom the defendant had employed were read to the plaintiff. The defendant using the statements in the report also represented, that at the prevailing price of copper, silver and lead ore produced, the gross value of the property considerably exceeded the amount for which it had been capitalized, and that the silver alone in one vein would more than pay the cost of mining and smelting. It was further represented, that the amount of ore already reported by the engineer was "but a drop in the bucket," and that "the work done up to this time was only a prospect; that the mine had not been scratched." It is settled that representations of this character in the sale of mining stock, especially where the property is in a foreign country, are not mere estimates, and seller's talk, of which the buyer must beware, but were material statements purporting to be made as of his own knowledge. *Bradley* v.

*Poole,* 98 Mass. 169. *Roberts* v. *French,* 153 Mass. 60. *Kilgore* v. *Bruce,* 166 Mass. 136. *Whiting* v. *Price,* 172 Mass. 240, 241. *Gurney* v. *Tenney,* 197 Mass. 457. The master having determined that the defendant knowing the statements to be untrue made them with the express intention that the plaintiff should rely upon them, and that the plaintiff believing them to be true actually bought and paid for the stock, the necessary elements of actionable fraud are found. *Stewart* v. *Joyce,* 201 Mass. 301, 310. In these sales the title to the stock was derived from the defendant with whom the plaintiff dealt, and whom he may treat as a principal, even if he had been informed that the proceeds of treasury stock were to be transmitted by the defendant for the benefit of the company. *Raymond* v. *Crown & Eagle Mills,* 2 Met. 319. *Kingsley* v. *Davis,* 104 Mass. 178, 180. *Welch* v. *Goodwin,* 123 Mass. 71.

The plaintiff's subsequent purchases after he became a director of the company of further shares of treasury stock, described in the first amendment to the bill, is stated by the master to have been accomplished solely through his reliance upon the misrepresentations of the defendant at their first interview. In the discharge of the duties of his office the plaintiff ordinarily would be presumed to have become sufficiently acquainted with the company's affairs to have enabled him to ascertain the value of the stock, and he could not hold the defendant responsible for subsequent losses due to his own lack of ordinary prudence. But the finding is unequivocal, and should be read with the further findings that the defendant "was at all times the directing personality of the corporation," and upon the evidence it was not certain "that either Wood or Almy ever definitely stated that the stock which they were receiving was treasury stock." The master's conclusion not appearing to have been plainly unfounded it should not be reversed. The shares acquired at these sales, which comprised all of the treasury stock remaining unsold, had been transferred by the defendant to Wood as selling agent after the first sale of stock to the plaintiff. It does not appear that the directors passed any vote requesting or directing a sale, although members of the board, when the first of the two last purchases was made, stated to the plaintiff that the company needed money for the development of the property, and he conferred with them as to

the amount required, and the purposes for which it was to be used. But the report states, that "the greater part of the conversation with regard to the purpose for which the money was needed was held with Almy, and neither Wood nor Angus participated to any extent." In the comprehensive words of Holmes, J. in *Isham* v. *Burgett*, 157 Mass. 546, 547, the defendant was "the mouthpiece of the transaction . . . although he used the name of his creature, the corporation." It is not only a warrantable, but almost a necessary inference in the absence of any contrary finding, that in selling the stock Wood acted in behalf of the defendant, even if the proceeds were needed by the company, and seem to have been turned directly into the treasury. The difference between the techincal form of these last sales, and the plaintiff's first purchase is not under the circumstances of controlling significance. It does not affirmatively appear that the parties mutually intended or understood that the company should be substituted for the defendant as the actual vendor, and the plaintiff can hold the defendant as the real principal. *Wilder* v. *Cowles*, 100 Mass. 487. *Isham* v. *Burgett*, 157 Mass. 546. *Caldwell* v. *Blanchard*, 191 Mass. 489.

The plaintiff having offered to return all of the stock however denominated, can rescind, and recover from the defendant the amounts paid, with interest from the dates specified in the report. *Bradley* v. *Poole*, 98 Mass. 169, 182, 184. *Nealon* v. *Henry*, 131 Mass. 153. *Snow* v. *Alley*, 144 Mass. 546, 555. *Thomas* v. *Beals*, 154 Mass. 51. *Gassett* v. *Glazier*, 165 Mass. 473. *Stewart* v. *Joyce*, 205 Mass. 371. *Vail* v. *Reynolds*, 118 N. Y. 297.

The defendant, as we have said, was the president and a director of the company, and if through his false representations the plaintiff as the master reports was induced to buy from strangers the "McLaughlin" and "Pond" stock, the defendant would be liable only in damages for which he must resort to an action at law. *Bradley* v. *Poole*, 98 Mass. 169. *Morgan* v. *Skiddy*, 62 N. Y. 319. *Weaver* v. *Cone*, 174 Penn. St. 104.

The plaintiff also asks for a decree against the corporation for the money paid for the treasury stock. It may be assumed, that the company which received the proceeds ordinarily could be charged with the false representations of its president if made in its behalf to induce the sales, and would not be permitted to

profit by the fraud, and escape the burden of making restitution. *Allen* v. *South Boston Railroad,* 150 Mass. 200. *Vreeland* v. *New Jersey Stone Co.* 2 Stew. 188. *Reese River Silver Mining Co.* v. *Smith,* L. R. 4 H. L. 64, 80. But if through any instrumentality he chose to employ, whether corporate or personal, the frauds conceived by him were committed solely in furtherance of his own purposes, and for his own profit directly or indirectly, as the report decisively shows, the company should not be held responsible. *Craft* v. *South Boston Railroad,* 150 Mass. 207. *Ashley* v. *Winkley,* 209 Mass. 509. The plaintiff, moreover, is restricted to the allegations of the bill, which cannot be enlarged by the evidence. *Malden & Melrose Gas Light Co.* v. *Chandler,* 209 Mass. 354, 358. And not having contracted with the corporation, there is no foundation on which the right to rescind as to this defendant can rest under the prayer for general relief.

The plaintiff's connection with the Alcimento Mines Company and the Alveoro Mines Company independently of his dealings with the defendant was also that of a stockholder, and if before reference to the master the bill had been taken for confessed as to each, it now is manifest from the report, that neither corporation is responsible for the plaintiff's losses. In these transactions, the defendant by false representations concerning the amount in money which he needed to pay the owner for the acquisition of each of the properties, obtained from the plaintiff large sums for their purchase, and induced him to invest in the capital stock of the corporation to be organized under these names to take over the respective mines and operate them. The properties were gold placer mines substantially similar in their physical aspects of anticipated mineral wealth, and before the plaintiff discovered the defendant's deceit the corporations were reorganized and consolidated. It is impossible upon the facts to come to any different conclusion from that of the master. By deliberate and material misrepresentations the defendant influenced the plaintiff, and obtained the money, a large part of which in the Alveoro purchase he appropriated to his own use, and if in the Alcimento purchase the amount he retained could not be exactly ascertained, the master unhesitatingly concludes, that the defendant did not pay any substantial sum, although he received from the plaintiff $30,000 to form part of a fund of $60,000 of which $50,000 was to be paid

for the mine and $10,000 was to be used for working capital. The stockholders, including the defendant, subsequently agreed to the consolidation of the corporations, and the exchange by the plaintiff of his certificates of Alcimento stock for an equivalent number of shares of the Alveoro Mines Company was a substitution in name, but not in substance to which the defendant assented. The position of the parties had suffered no material change, and the tender of the shares under one name or the other is sufficient to restore to the defendant, what the plaintiff originally received, and not having deprived himself of the right to rescind, he can recover the entire amount paid in each transaction. *Bartlett* v. *Drake,* 100 Mass. 174. *Neblett* v. *Macfarland,* 92 U. S. 101. *Thackrah* v. *Haas,* 119 U. S. 499. *Savery* v. *King,* 5 H. L. Cas. 627. *Adam* v. *Newbigging,* 13 App. Cas. 308.

Nor is relief barred by the agreement entered into after the consolidation. The instrument is not under seal, and does not purport to be a release. The master furthermore reports, that it was executed to adjust differences relating to the amount of gold in the mines, and the cost of extraction concerning which the plaintiff claimed to have been misled by the defendant, and was wholly apart from any claim that the purchase price had been misrepresented.

It results from this review of the master's report, that all his material findings were warranted, and accordingly the plaintiff in the transactions where we have said he can rescind, should be decreed full relief under the fourth prayer of the bill. A decree is to be entered, affirming all the interlocutory decrees and orders from which appeals were taken, overruling the exceptions of the parties to the master's report and confirming the report, and dismissing the bill with costs as to the defendants Wood and Angus. The Alcimento Mines Company does not appear to have had any corporate existence when suit was begun, and as to this defendant the bill is to be dismissed without costs. *Russell* v. *Lathrop,* 122 Mass. 300. The terms as to costs, and the details and form of the decree against the defendants William F. Almy, Lillian W. Almy, the Argenta Mines Company, and the Alveoro Mines Company are to be settled before a single justice. *Goodwin* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189, 203. It is unnecessary to review the master's brief reports in the remaining cases, as the first suit

embraces the merits of the entire litigation, and these bills are to be dismissed without costs and without prejudice to the plaintiff's right of recovery under the first bill.

*Ordered accordingly.*

