HARRY C. RAYNES *vs.* ARTHUR R. SHARP & others.

Suffolk. January 20, 1921. — March 3, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction*, Over foreign corporation, To relieve from fraud. *Fraud. Receiver. Corporation*, Foreign. *Equity Pleading and Practice*, Bill, Demurrer.

A bill in equity, brought by a creditor of a foreign corporation, who also was a stockholder, against that corporation and certain individuals and domestic cor-

porations, alleged that the plaintiff and the individual defendants engaged in a common enterprise of constructing ships for the United States Shipping Board Emergency Fleet Corporation and that for that purpose the defendant foreign corporation was created, having its principal office and officers in Massachusetts; that the individual defendants later deceived and misled the plaintiff and through various fraudulent transactions, which were set out in detail in the bill, gained control of the foreign corporation and the assets, including the profits of the enterprise, and rendered the corporation insolvent. The bill also alleged that if the fraudulent transactions were set aside the foreign corporation would be solvent and able to pay the plaintiff the amount due him for services and also his share of the profits of the enterprise, and in substance prayed that a receiver of the defendant foreign corporation be appointed, that its assets be decreed to be a trust fund for the benefit of the plaintiff and the individual defendants as their interests might appear, that the alleged fraudulent transactions be set aside and for further relief. The defendants demurred. *Held,* that

(1) The court had power within its discretion to entertain the bill;

(2) The court had jurisdiction to appoint a receiver;

(3) The court had power to adjudicate that the assets of the foreign corporation or funds derived from or received by it on account of the contract with the Fleet Corporation constituted a trust fund which might be marshalled;

(4) The form of relief, if the plaintiff succeeded in establishing liability, was for the court to determine;

(5) The court was not limited by specific prayers appearing in any form in the bill, but under a general prayer could decree adequate relief;

(6) A demurrer on the ground that a bill is multifarious is not equivalent to a demurrer on the ground that no case entitling the plaintiff to equitable relief is stated;

(7) The bill was not multifarious.

In the bill in equity above described, it was alleged that counsel undertook and promised with the knowledge and approval of certain of the individual defendants, referred to collectively as the M Interests, to act for the defendant foreign corporation and also to act as counsel "in this undertaking for all of the various parties in interest, including the plaintiff, and said counsel thereby undertook fairly and with fidelity and without discrimination to represent the respective interests of each of said parties and particularly to safeguard the interests of the plaintiff in said undertaking and in said proposed corporation." *Held,* upon demurrer to the bill, that it was plain under that allegation that any management of affairs by the counsel in derogation or destruction of the plaintiff's rights could be found to be the acts of the M Interests.

In the suit above described it was *held,* that, if through the deception, false advice, and fraud of the demurrants, the plaintiff was led to surrender his rights for the ultimate advantage and gain of individual defendants referred to as the M Interests or the representatives of those interests, and, with knowledge of what was being done and of the underlying purpose, they participated through counsel or by their own individual efforts, they were severally chargeable with the alleged results.

In the suit above described it also was *held* that, if the plaintiff could prove that by secret, complicated devices, an extraordinary and subtle scheme of manipulation was co-ordinated whereby the foreign corporation had been purposely

stripped of its available assets and rendered insolvent, so that the profits of the enterprise under one form or another could be claimed and appropriated by the M Interests, the plaintiff was entitled to an accounting from the participants, even if they asserted technically different and distinct rights. ·

BILL IN EQUITY, filed in the Supreme Judicial Court on November 18, 1920, by a stockholder in the Atlantic Corporation, a corporation organized under the laws of Maine, against that· corporation, the Mason Machine Works, the Mason Machine Works Company and the New England Trust Company, all corporations organized in Massachusetts, certain individuals domiciled in Massachusetts, collectively referred to as the Mason Interests, and certain other individuals domiciled in Massachusetts who were voting trustees of the stock of the Atlantic Corporation. The allegations of the bill were in substance that the plaintiff and the Mason Interests engaged in a common enterprise of constructing cargo vessels through the instrumentality of the Atlantic Corporation and the Mason Interests through their lawyer, who also was the plaintiff's lawyer, conceived and put into effect a plan whereby the Mason Interests fraudulently obtained control of the Atlantic Corporation and the profits of the enterprise, deprived the corporation of its assets and rendered the plaintiff's interest as a stockholder and creditor valueless. The prayers of the bill in substance were that a receiver be appointed for the Atlantic Corporation, that profits and money paid by or due from the United States Shipping Board Emergency Fleet Corporation to the Atlantic Corporation and amounts realized from the sale of its property and all funds accruing to the Atlantic Corporation on account of its contract with the Fleet Corporation be declared a trust fund for the benefit of the plaintiff and the Mason Interests as their interests might appear, that the trust fund when established be ordered distributed to the beneficiaries, and for further relief.

The defendants filed an answer, including therein a demurrer upon the following grounds:

"(1) That said bill is multifarious.

"(2) That the court has no jurisdiction to appoint a receiver of the plant or property of the Atlantic Corporation situated outside the Commonwealth of Massachusetts.

"(3) That the court has no jurisdiction to appoint any receiver

of the Atlantic Corporation prior to the appointment of such receiver by the courts of Maine, under the laws of which State said corporation was organized and exists.

"(4) That a determination of the cause of action purported to be stated in said bill would involve the examination and adjudication of the internal affairs of said the Atlantic Corporation, a foreign corporation organized and existing under the laws of the State of Maine, and that the court has no jurisdiction or authority to make such examination and adjudication.

"(5) That this court has no jurisdiction to grant the relief prayed for, to adjudicate that any assets and funds accruing to the Atlantic Corporation on account of said contract with said Fleet Corporation constitute a trust fund, or to order the distribution thereof or to liquidate said the Atlantic Corporation or order any distribution of its assets or to adjudicate as to the ownership of the entire stock of said corporation or to order any of said stock cancelled."

The case was heard upon the bill and demurrer by *Jenney,* J., who ordered the demurrer overruled and, at the request of the defendants, reported the case upon the bill and demurrer for determination by this court with the provision that "If the demurrer is sustained upon any ground which can be cured by amendment, the plaintiff may amend and the case is to stand for hearing on its merits; otherwise the bill is to be dismissed."

*W. G. Thompson & S. L. Whipple,* for the defendants.

*M. Storey, (H. M. Channing* with him,) for the plaintiff.

BRALEY, J. We shall refer to the subdivisions of the demurrer by paragraphs, and under paragraph four it is contended that the court has no jurisdiction to examine into the internal affairs of the demurrant, the Atlantic Corporation, which, although organized in another State, has its office and does business in this Commonwealth. It is alleged that through this instrumentality as managed by the individual demurrants, and their interlocking corporate interests and control, the plaintiff has been misled and defrauded, and that when certain fraudulent acts and combinations are set aside and consequent losses made good, the corporation instead of being insolvent will be financially able to pay for his services and transfer to him his proportionate share of the benefits of the joint enterprise which the corporation was formed

not merely to promote, but to acquire title to the construction contract for building the ships, obtained chiefly by the plaintiff, and to receive the moneys paid under the contract by the United States Shipping Board Emergency Fleet Corporation. The bill even if the demurrant corporation "is no longer a going concern," does not ask for a winding up and dissolution, which can only take place under proper proceedings in the courts of its domicil, and the other demurrants being domiciled here, the corporation, if the allegations of the bill are made out, was merely their tool. See *Arnold* v. *Maxwell*, 223 Mass. 47. It is settled that under such conditions, where in some form a satisfactory remedy justly may be given, this court in its discretion will entertain the bill. *Wineburgh* v. *United States Steam & Street Railway Advertising Co.* 173 Mass. 60, 62. *Richardson* v. *Clinton Wall Trunk Manuf. Co.* 181 Mass. 580. *Van Arnim* v. *American Tube Works*, 188 Mass. 515. See *Hancock National Bank* v. *Ellis*, 172 Mass. 39, 46; *Howarth* v. *Lombard*, 175 Mass. 570; *Walsh* v. *Boston & Maine Railroad*, 201 Mass. 527.

The causes assigned in paragraphs two, three and five, that the court has no jurisdiction to appoint a receiver of the plant or property situate outside of the Commonwealth, or prior to the appointment of a receiver under the laws of the State of its origin, or to adjudicate that any of its assets or funds derived from, or received on account of the plaintiff's contract constitute a trust fund which may be marshalled, cannot be sustained. The form of relief, if the plaintiff succeeds in establishing liability, is for the court then to determine. It may be a money decree to be satisfied by the individual defendants severally or jointly, or solely by the corporation. *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 476, and cases there collected. The court is not limited by specific prayers appearing in any form in the bill, but can under the general prayer decree adequate relief. *Ginn* v. *Almy*, 212 Mass. 486, 493. *Eastern Bridge & Structural Co.* v. *Worcester Auditorium Co.* 216 Mass. 426, 428.

It follows that the demurrer addressed to the prayers for specific relief, even when read in connection with the thirty-fourth paragraph of the bill, is not well taken.

The first paragraph however assigns as cause of demurrer, "That said bill is multifarious." A demurrer on this ground is

not equivalent to a demurrer on the ground that no case entitling the plaintiff to equitable relief is stated. The demurrants do not specifically point out whether the bill is multifarious because of a misjoinder of causes of suit, or whether there is a misjoinder because they are made parties to the litigation with a material part of which they are not connected, and where different and independent decrees will be required. But it is stated in the brief that "The wholly independent and distinct rights upon which the bill is based . . . cannot be enforced, and the wrongs involved in their violation cannot be redressed, in a single bill."

It was long ago said that to lay down any rule generally applicable, or as an abstract proposition to say what constitutes multifariousness, is upon the authorities impossible. *Robinson* v. *Guild,* 12 Met. 323, 328. *Harrison* v. *Perea,* 168 U. S. 311. If there is a joinder of alleged causes so diverse and disconnected that the defendants will be subjected to great and useless expense, the court ordinarily will dismiss the bill. But where it appears and is admitted that through a series of different material acts adopted and participated in by the defendants acting together for a common purpose to defraud the plaintiff, the objection of multifariousness will not be entertained. *Andrews* v. *Tuttle Smith Co.* 191 Mass. 461. *Noble* v. *Joseph Burnett Co.* 208 Mass. 75, 84. *Ginn* v. *Almy,* 212 Mass. 486, 493, and cases cited. *Reno* v. *Cotter,* 236 Mass. 556, 563. We are of opinion that the bill calls for the application of this rule.

The plaintiff, a competent consulting mechanical engineer of many years experience, well qualified to construct a shipyard and to build steam cargo vessels, entered into negotiations with the United States Shipping Board Emergency Fleet Corporation for the purpose of securing a construction contract. And having selected a suitable site for a ship building plant at Portsmouth, New Hampshire, he made an oral agreement to purchase the property for $600,000. But, before the contract with the Fleet Corporation was signed, he solicited the National Engineering Corporation, a construction company located in Boston, which was able, ready and willing to assist, to undertake the construction of a shipyard on the site selected at cost plus a reasonable profit. It was through the suggestion of the officers of this corporation that the plaintiff consulted counsel for the demurrants,

the Mason Machine Works, Mason Machine Works Company, Sharp, Mason, Bent, as well as one Clark and Osborne who at that time were representatives of the Mason Machine Works. The bill refers to these parties as the "Mason Interests," and we shall hereafter use this designation. The plaintiff and a representative of the National Engineering Corporation thereupon began to negotiate an oral contract with the Mason Interests, which in substance provided that the plaintiff should have the active charge of the construction of the yard and building of the ships at an annual salary of $24,000, while the National Engineering Corporation was to build the shipyard at cost plus a reasonable profit. The Mason Interests were to manufacture the engines at cost plus a reasonable profit and to supply $1,000,000 in cash or credit to the Atlantic Corporation which was to be organized to take title to the property to be acquired and to undertake the contract for building the ships. The shares when issued, and all profits were to be divided equally between the plaintiff, the National Engineering Corporation, and the Mason Interests, one third to each. The bill alleges that counsel undertook and promised with the knowledge and approval of the Mason Interests to act for the proposed corporation and also to act as counsel "in this undertaking for all of the various parties in interest, including the plaintiff, and said counsel thereby undertook fairly and with fidelity and without discrimination to represent the respective interests of each of said parties and particularly to safeguard the interest of the plaintiff in said undertaking and in said proposed corporation." It is plain under this allegation that his management of affairs in derogation or destruction of the plaintiff's rights can be found to be the acts of the Mason Interests. It is further alleged that he then organized in his office a corporation chartered in the State of Maine under the name of the Atlantic Corporation, the directors of which "were employees in his office," with a nominal capital "of which not more than $500 was paid, qualifying shares only being issued at the inception of the enterprise." The plaintiff personally also completed his negotiations with the Fleet Corporation for the construction of ten steel steam cargo carrying vessels ". . . for the total lump sum of approximately $14,000,000." And "The profits which said associates expected to derive from said contract in

addition to the salary to be paid the plaintiff and to the esti-
mated profits on the yard construction contract and on the
engine contract, which it had been agreed should be divided
between the association in equal thirds . . . amounted to a
very large sum." The contract having been executed by the
Fleet Corporation, and the Atlantic Corporation to which the
real estate had been conveyed subject to mortgage for sub-
stantially the entire purchase price, the Mason Interests, acting
through their counsel, owning the Atlantic Corporation which
held title to the real estate and the contract, thereafter domi-
nated the enterprise. The succeeding allegations of fiduciary
duty to preserve in so far as possible the property and rights
acquired and held by the Atlantic Corporation which counsel
controlled, for the equal benefit of the plaintiff, the Mason In-
terests and National Engineering Corporation in giving to each
one third of the stock when issued, and one third of the profits,
are merely descriptive of the general situation for he has not been
made a party defendant. The bill however states that by the
deception practised by the Mason Interests, their representatives
and counsel acting in concert, the plaintiff was misled and in-
duced to consent to an agreement for the purchase by the Atlantic
Corporation of all the stock of the Mason Machine Works, to be
paid for by the promissory notes of the corporation secured by
the pledge of the Mason stock as collateral, and the increase of
the corporation's capital stock, and the formation of a voting
trust controlled by the Mason Interests, and the issuance of the
stock, which plan when fully matured and put into operation de-
prived him of any participation in the profits actually derived
from the contract, amounting in all "to over $1,500,000," and
also entailed a loss of nearly "$20,000 of his own money, which
he had expended on preliminary work and during the negotia-
tions, of which the Atlantic Corporation . . . through its holding
of the Fleet Corporation contract" had the benefit. If through
the deception, false advice, and fraud of the demurrants the plain-
tiff was led to surrender his rights for the ultimate advantage
and gain of the Mason Interests, or the representatives of those
interests who with knowledge of what was being done and of
the underlying purpose, participated through counsel, or by their
own individual efforts, they are severally chargeable with the

alleged results. *Ginn* v. *Almy*, 212 Mass. 486, 504, 505. *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 476, and cases cited. The ensuing steps which are set forth with great particularity and need not be recapitulated, were all directed to the sole object of wrongfully placing in the possession and control of the Mason Interests all the profits of the common enterprise or adventure.

We have fully considered the fundamental grounds on which the bill rests, and, if he can prove that by secret, complicated devices, an extraordinary and subtle scheme of manipulation was co-ordinated whereby the Atlantic Company has been purposely stripped of its available assets and rendered insolvent, so that all the profits of the enterprise under one form or another can be claimed and appropriated by the Mason Interests, which has acquired the share of the National Engineering Corporation, the plaintiff is entitled to an accounting from the participants, even if they assert technically different and distinct rights. The interest or right claimed in the bill, as previously said, being an interest in common, they have a common liability as between themselves and the plaintiff, while the relief to be granted, whatever the form, is of the same general character. *Dyer* v. *Clark*, 5 Met. 562, 580. *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 477. *Ginn* v. *Almy*, 212 Mass. 486, 493. *Collins* v. *Stix, Kraus & Co.* 96 Ala. 338. *Bugbee* v. *Sargent*, 23 Maine, 269. *Farrar, Burt & Co.* v. *Powell*, 71 Vt. 247. *United States* v. *American Bell Telephone Co.* 128 U. S. 315. *Brown* v. *Guarantee Trust & Safe Deposit Co.* 128 U. S. 403. *Boyd* v. *Moyle*, 2 Coll. 316.

The decree overruling the demurrer should be affirmed.

*Ordered accordingly.*