GARDNER G. STEVENS *vs.* MARY E. THISSELL.

Essex.   November 7, 1921. — March 3, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Duress. Fraud. Deed,* Validity. *Evidence,* Competency.

At the trial of a writ of entry, brought by one who had purchased the demanded premises at a sale in foreclosure of a mortgage given by the tenant, the tenant contended that the mortgage was procured by duress. It appeared that the tenant was the mother of a debtor of a corporation and that he had forged her name as an indorser upon notes which he gave the corporation in payment; that after negotiations between an attorney for the son and an attorney for the corporation and for its treasurer, the tenant gave the mortgage to the president of the corporation, the forged notes were surrendered, and the mortgage was assigned to the corporation and by it was foreclosed by sale to its treasurer, the demandant, who, it was agreed, "took title with full notice and knowledge of the tenant's claim that the mortgage was obtained by duress and was voidable." There was evidence tending to show that the attorney for the corporation, acting within the scope of a retainer to obtain payment or security for the payment of the notes, stated in substance to the attorney for the tenant's son that, if the mortgage was not given, the son would have to go to jail, and intended and proposed to the son's attorney that he should cause the tenant to be informed of the attitude and demands of the corporation; that such information was given to the tenant by the son's attorney; that the demandant, treasurer of the corporation in charge of the negotiations, with full knowledge acquiesced therein, and that the mortgage was executed by the tenant "for fear of the consequences" of her not doing so. *Held,* that

(1) The representations and knowledge of the attorney for the corporation in the circumstances were binding upon the corporation and the demandant;

(2) Testimony of the attorneys, respectively for the corporation and for the son, detailing the history of their negotiations, was admissible as evidence;

(3) In the circumstances, the fact, that neither the attorney nor any representative of the corporation "saw or communicated [directly] with the tenant" or her husband about "these forgeries, or the giving of the mortgage in question," was immaterial;

(4) A finding was warranted that the mortgage was procured or obtained by duress by the corporation or by its president or by an agent, servant or attorney of one of them.

WRIT OF ENTRY to recover possession of three parcels of land in Beverly Farms and Manchester. Writ in the Land Court dated June 21, 1920.

In the answer the tenants alleged "that the demandant has no title to the demanded premises and no right to the possession of the same, except by virtue of the foreclosure of a certain mortgage, procured by one Benjamin F. Bullard acting for and in behalf of the William M. Flanders Company by duress and threats of criminal prosecution and in condonation of an alleged crime of forgery."

The suit was sent to the Superior Court for trial upon three issues framed in the Land Court, of which, by agreement of the parties, only one, described in the opinion, was submitted to the jury. In the Superior Court there was a trial before *N. P. Brown*, J. Material evidence and an exception to certain evidence is described in the opinion.

At the close of the evidence, the demandant moved that the jury be instructed to return a negative answer to the issue submitted to them. The motion was denied. The jury answered the issue in the affirmative; and the demandant alleged exceptions.

*W. A. Pew*, (*A. W. Putnam* with him,) for the demandant.

*E. S. Underwood*, for the tenant.

BRALEY, J. The demandant's title depends on the validity of the mortgage given by the tenant to Benjamin F. Bullard and assigned by him to the William M. Flanders Company, which foreclosed it, the demandant being the purchaser at the sale. The following issue to determine this question was framed by the Land Court and transmitted to the Superior Court for trial. St. 1904, c. 448, §§ 1, 8. G. L. c. 185, §§ 1, 15. "Was a certain mortgage, alleged to have been given by Arthur P. Thissell and Mary E. Thissell to Benjamin F. Bullard, dated February 14,

1918, and recorded with Essex South District Deeds, book 2387, page 7, and assigned to William M. Flanders Company, procured or obtained by the said Benjamin F. Bullard or the said William M. Flanders Company, or the agents, servants, or attorneys of either of them, by duress?" The jury answered the question in the affirmative. The parties agreed that Bullard was the president and Stevens the treasurer of the company, while Alfred W. Putnam, Esquire, acted as counsel for it and for Stevens who "took title with full notice and knowledge of the tenant's claim that the mortgage was obtained by duress and was voidable." It was admitted that the tenant's son, being indebted to the William M. Flanders Company, forged the name of his mother as an indorser on two promissory notes which he gave the company in payment. The forgery as to one of the notes at least having been confessed to the company's treasurer, he employed counsel to represent the company, who after negotiations with Oscar E. Jackson, Esquire, counsel for the son, received the mortgage duly executed by the tenant and the notes were surrendered.

The demandant contends that the record does not show that any duress was practised upon the tenant, or that if she was influenced by any improper suggestion, it did not come from any one representing the company "but from her son . . . who was the forger," and that there is no evidence showing that the tenant's "'fear of the consequences' was known or in any way intimated to the demandant or any person representing the" company. The representations and knowledge of counsel retained by them and through whose efforts the mortgage was ultimately procured were binding upon Stevens and the company. *Anthony & Cowell Co.* v. *Brown,* 214 Mass. 439. *Raynes* v. *Sharp,* 238 Mass. 20. The treasurer, called as a witness by the tenant, testified that his counsel told him that the inducement which was being held out to the tenant "as a consideration or reason for her giving the mortgage was the surrender of the forged note," and when asked, "Wasn't it because with these forged notes in your possession you could jail this man?" answered, "That could be done." He further said "that he knew whatever inducement or reason was being held out, or had to be held out, for the obtaining of that mortgage was being held out or made through Putnam

and Jackson; and that if the surrender of the forged notes as an inducement for her giving the mortgage was being held out to Mrs. Thissell, he knew it would have to be held out through Jackson and Putnam, and he was willing that that should be done; that he did n't care how Putnam got their money as long as they got it; that it was entirely agreeable to him what Mr. Putnam did in the matter and that he permitted Mr. Putnam to surrender the forged notes on the condition that he could get the mortgage; that he would have approved of anything Mr. Putnam did in the case." The jury could find on the evidence of Mr. Jackson and of Mr. Putnam detailing the history of their negotiations, which was plainly admissible, *Raynes* v. *Sharp, supra,* that if the mortgage was not given, "about the only alternative was" that the son "would have to go to jail." And when Mr. Jackson was asked whether Mr. Putnam in his interviews with him said in any form of words, "If he gives this mortgage he wont have to go to jail?" he answered, "Yes. That was said, or that inference was given in some form, that, of course, if he was successful in carrying through the negotiations all right, why then it would not be necessary for him to go to jail." It appears in Mr. Putnam's evidence that Mr. Jackson demanded the surrender of the "forged note," and he further said, "Yes," in answer to the question, "And you expected him," meaning Mr. Jackson, "to communicate that fact to her in some way that you would surrender the note if she would give that mortgage?" And "that he did undoubtedly tell Mr. Stevens that they could either sue on the note, or go right up to the court and make criminal complaint."

It is immaterial that there "was no evidence that Putnam, or Stevens, or Bullard, or any representative of the Flanders Company saw or communicated with the tenant . . . or with her husband . . . about these forgeries, or the giving of the mortgage in question." The jury well could say that such communications were unnecessary, as counsel for the company acting within the scope of his general retainer to obtain payment or security for the payment of the forged notes, intended and proposed during his conversation with him, that Mr. Jackson in some way would cause the tenant to be informed of the attitude and demands of the company, or of Stevens who could be found on his own evi-

dence to have had full charge of the settlement, including the procurement of the mortgage. The evidence also was sufficient to warrant a finding of knowledge, and acquiescence in, the negotiations conducted by their counsel. *Beacon Trust Co.* v. *Souther,* 183 Mass. 413, 417. And that no arrangement for an adjustment of the indebtedness to be secured by a mortgage of her real property and home could be effected unless she was informed of the material facts. The tenant, whose evidence the jury could accept as true, said, that she was present at a conversation between her husband and Mr. Jackson concerning the signing of the mortgage, where it was said, "That we were obliged to sign it or my son would go to jail." And when asked, "Why did you sign that mortgage?" she replied, "I signed for fear of the consequences," which were stated to be, "Well, the grievance it would cause in my home and the serious heart trouble of my husband. We could not tell how it would affect him if my son went to jail. . . . Of course it would affect the family, and . . . my little grandson." It "is of no consequence how the domination over the mind was acquired; it is enough that it was acquired." *Phillips* v. *Chase,* 203 Mass. 556, 561.

We have referred sufficiently to the evidence which tended to show, and made the question one of fact for the jury, whether the tenant acted of her own free will or was influenced and induced by the company's demands and the precedent conditions whereby that demand could only be met and satisfied, to execute. and deliver the mortgage through a created fear of a threatened criminal prosecution and imprisonment of her son. If they came to this conclusion the mortgage was procured by duress. *Harris* v. *Carmody,* 131 Mass. 51, 55. *Morse* v. *Woodworth,* 155 Mass. 233, 250, 251. *Silsbee* v. *Webber,* 171 Mass. 378, 380. *Anthony & Cowell Co.* v. *Brown,* 214 Mass. 439, 442. *Adams* v. *Irving National Bank of New York,* 116 N. Y. 606.

The demandant's request for a directed verdict was denied rightly, and the evidence as to private conversations between husband and wife although erroneously admitted, having subsequently been struck out and the jury instructed to disregard it, the exceptions must be overruled. *Dempsey* v. *Goldstein Brothers Amusement Co.* 231 Mass. 461.

*So ordered.*