WILLIAM H. TAYLOR vs. JAMES A. NEAL & others.

NELLIE G. TAYLOR vs. SAME.

Suffolk.    January 10, 1927. — July 1, 1927.

Present: RUGG, C.J., PIERCE, WAIT, & SANDERSON, JJ.

*Equity Pleading and Practice*, Bill, Parties.   *Equity Jurisdiction*, To enjoin expulsion from The First Church of Christ, Scientist, in Boston. *Christian Science.*

Demurrers to a bill in equity of 231 printed pages by an individual who by action of the trustees of The First Church of Christ, Scientist, of New York City, a "Branch Church," had been dropped from its·roll of membership and, by action of the board of directors of The First Church of Christ, Scientist, in Boston, the "Mother Church," had been placed on probation, seeking relief against the corporate bodies and the board of trustees of the Branch Church and the board of directors of the Mother Church, and other correlated relief, were sustained on the following grounds:

(1) Because the bill was obnoxious to G. L. c. 214, § 12, and ran counter to rules of good equity or common law pleading in that it contained arguments, discursive narrative, evidence and extraneous and irrelevant matter;

(2) Because the bill was multifarious in seeking uncorrelated relief from different defendants, its allegations not being sufficient to make the Mother Church a party in interest to the Branch Church proceedings;

(3) Because the bill was multifarious in that, while relief was not asked for the expulsion from the Mother Church of a woman, association with whom in church matters the plaintiff alleged was the cause of the alleged acts of bad faith and conspiracy on the part of the individual defendants toward him, or from certain acts of discipline taken against other members of the Branch Church, the plaintiff did seek to have the court decide as a fact, in his proof of bad faith and conspiracy on the part of the individual defendants toward him, that the procedure and disciplinary action taken in the cases of the woman and the other members of the Branch Church were in bad faith;

(4) Because there were in the allegations of fact in the bill no sufficient statement which, if present, would warrant a conclusion of fact that the Mother Church, in the action of its board of directors, and the Branch Church, in·the action of its trustees, separately acted in bad faith or were bound together in fraud and conspiracy to injure the woman above described and her followers, including the plaintiff.

TWO BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on November 16, 1925.

The bills and demurrers by certain defendants are described in the opinion. The demurrers were heard by *Crosby*, J., by whose order there were entered interlocutory decrees sustaining the demurrers and final decrees dismissing the bills. The plaintiffs appealed.

*W. Fairchild*, of New York, (*C. A. Barnes & D. Edwards* of New York with him,) for the plaintiffs.

*W. A. Dane*, (*F. H. Chase & R. E. Buffum* with him,) for the defendants.

PIERCE, J. These two suits in equity are brought respectively by William H. Taylor and by his wife, Nellie G. Taylor, both of New York, against the Christian Science Board of Directors as a board and as individuals; John V. Dittemore, a former director of The Mother Church, against whom the bills were dismissed without prejudice February 20, 1926; The First Church of Christ, Scientist, in Boston, hereinafter referred to as The Mother Church, a body corporate authorized to receive and to hold real estate and personal property for religious, educational and charitable purposes; Clifford P. Smith, a former first reader of The Mother Church; First Church of Christ, Scientist, of New York City, hereinafter called the Branch Church, and its trustees, who filed neither appearance nor answer. Except as to pertinent changes in point of detail, and to avoid unnecessary duplication, the bills of complaint, which are in all respects similar, will be treated as one, and reference will be made only to the bill of William H. Taylor. It is stipulated that the decision in one suit will be accepted as the decision in the other.

The bill in each case covers two hundred and thirty-one printed pages and is not susceptible of concise statement. Excluding statements that are clearly evidentiary and arguments thereon, in substance the bill is as follows:

The plaintiff is a member of The Mother Church. The defendants Neal, Merritt, Rathvon, Knott and Adams comprise the Christian Science Board of Directors, trustees under a deed of trust dated September 1, 1892, and an amendatory deed of March 3, 1903, both executed by Mary Baker Eddy, the discoverer and founder of Christian Science. The scope

of the powers conferred upon, and duties required of, the directors is determined and limited by the Church Manual, which "is universally recognized and accepted . . . as the governing body of laws and precepts for all Christian Scientists." "Subject to the limitation, that a candidate to fill a vacancy occurring in the Christian Science Board of Directors must be first approved by the Pastor Emeritus, Mary Baker Eddy, the said Board of Directors are a self-perpetuating continuing body"; and although as now constituted none of its members received such approval, "the said Board claims and exercises the right and privilege of self-perpetuation and is and has been a continuing body during all the times the acts complained of herein were committed, that is, from and during the year 1908 to the present time."

In the year 1886, Mary Baker Eddy sent one Augusta E. Stetson — taught by her and upon whom Mrs. Eddy conferred the degree of Doctor of Christian Science in 1884 — to New York City "to establish the Christianity of Christian Science," and placed her in charge of the work there. Mrs. Stetson assembled seven or eight of Mrs. Eddy's students, and organized the Branch Church herein alluded to. She occupied the pulpit at the first Sunday service in November, 1886, became a charter member upon its incorporation in 1888, and, in 1890, Mrs. Eddy caused her to be ordained its pastor, which office she continued to hold for ten years; thereafter, until July 20, 1902, she held the position of first reader therein. She was one of the original board of trustees, serving in that capacity continuously until her resignation in 1909. During the period between 1886 and 1909, Mrs. Stetson conducted classes in Christian Science mind healing, and her students constituted the main body of the membership of the Branch Church, among whom was the plaintiff who received from her the degree of C. S. D. The bill recites the intimate relations between Mrs. Eddy and Mrs. Stetson, describes the building of the Branch Church in New York City, the laying of the corner-stone, and its dedicatory exercises on November 29, 1903. All the money used in the purchase of the land and construction of the church was

contributed by Mrs. Stetson and her students, and the structure was denominated by Mrs. Eddy herself as "Mrs. Stetson's church." These matters are stated "to show the unusual and unique relationship of love, confidence and trust, in which Mrs. Stetson was held by her Leader, Mary Baker Eddy."

About the year 1908, open expression was given to feelings of envy and jealousy which had been aroused in the minds of certain officials in the church and members in the field, with the result that there were promulgated false reports and statements to the effect that should Mrs. Eddy relinquish her place as head or leader of The Mother Church, Mrs. Stetson would attempt to usurp her prerogatives. To controvert this undercurrent of misrepresentation, Mrs. Stetson repeatedly declared, both orally and through the press, that Mary Baker Eddy "would forever remain Leader and the *spiritual* and *actual head* of The Church of Christ, Scientist." As stated in art. XXXV, § 1, of the Church Manual, the manual "is adapted to The Mother Church only," and "shall not be revised without the written consent of its author." In substance, the bill alleges that the manifest purpose of Mrs. Eddy was that the organization, government and discipline of the branch churches should be and remain separate and distinct from that of The Mother Church; that The Mother Church as a church organization should cease to function "If the Pastor Emeritus . . . should relinquish her place as the head or Leader of The Mother Church" and, correlatively, that the board of directors should gradually discontinue and cease to function; that each branch church should "continue its present form of government in consonance with The Mother Church Manual"; and that the active work of Christian Science should proceed independently through the branch churches. This purpose, the plaintiff avers, is plainly indicated by art. I, § 5, requiring Mrs. Eddy's personal approval of a candidate to fill a vacancy in the board of directors, and the positive statement in art. XXXV, § 3, that "No new Tenet or By-Law shall be adopted, nor any Tenet or By-Law amended or annulled, without the written consent of Mary Baker Eddy"; but that,

despite these provisions of the by-laws, the members of the board have frustrated Mrs. Eddy's intention by electing members who have not been so approved, and that the board of directors is without existence in law or equity, according to the manual.

Prior to, and during the year 1909, the then directors, acting conjointly with others in authority and in violation of the manual, believing that the demise of Mrs. Eddy was imminent, conceived a scheme whereby they might secure to and perpetuate among themselves the succession over and control of not only The Mother Church but also the branch churches.

As early as 1907, Mrs. Eddy realized that, notwithstanding her instructions, the directors were blinded to the spiritual by their determination to control the material organization, and recognized that Mrs. Stetson and some of her students had the spiritual concept which she herself had taught, as evidenced by her letters to Mrs. Stetson and also an open letter published in the Christian Science Sentinel of January 16, 1909. At this time the largest and most influential of the branch churches was that built up by Mrs. Stetson. In furtherance of their alleged wrongful scheme, the directors, in coöperation with others, instituted a campaign for the purpose of discrediting Mrs. Stetson, and thus open the way to their own aggrandizement. These attacks were directed not against the character of Mrs. Stetson but solely against Mrs. Stetson's teaching and practice of Christian Science. It is further alleged that the then directors, the defendant Smith and others, procured the coöperation of the then first reader of the Branch Church to institute groundless proceedings against Mrs. Stetson which, in the form of a complaint, were entertained by the directors of The Mother Church, contrary to and in violation of the manual, and afterward dismissed by them with the statement that "the entire matter is now left with the branch church of which you are a member." Coincidently they sent a letter to the then first reader of the Branch Church, upon whom the by-laws conferred power to enforce discipline, directing attention to the complaint; and they obtained from him the assurance

that "if any charges are preferred they will receive due and prompt attention." At no time were any charges preferred against Mrs. Stetson before the duly constituted authorities of the Branch Church.

On September 24, 1909, the directors called a "conference" of the trustees of the Branch Church, excluding Mrs. Stetson but including the plaintiff, at which it was admitted that the charges against her had been dismissed. On the very next day "Findings and Orders" against Mrs. Stetson were "officially and formally promulgated," accusing her, as a member and trustee of the Branch Church, of seven distinct disciplinary offences, revoking her license to teach and removing her card as a teacher and practitioner from the Christian Science Journal, all of which was in contravention of the Church Manual. At no time was "admonition" given to Mrs. Stetson. Immediately after the so called "conference" at Boston, preparations were made by the trustees of the Branch Church, exclusive of Mrs. Stetson, to investigate fully conditions in the Branch Church, conducted by a "Committee of Inquiry" composed of eight members of the board, of which the plaintiff was one. The report of this committee completely exonerated Mrs. Stetson, and was accepted and approved by the church at its corporate meeting November 4, 1909. Thereupon, irrespective of the fact that neither the directors nor the first reader had disciplinary jurisdiction over her, Mrs. Stetson was summoned to a trial or hearing to be held November 15, 1909, at Boston. On November 17, 1909, the directors issued a "judgment and order" dropping her name from the roll of membership in The Mother Church. It is the contention of the plaintiff that the "findings and orders" of September 25, 1909, and the "judgment and order" of November 17, 1909, are utterly void and of no effect. On October 16, 1909, Mrs. Stetson tendered her resignation as a member of the board of trustees of the Branch Church; no action was taken on this resignation until November 24, 1909, when it was accepted, together with her resignation as a member of the Branch Church, which she had tendered on November 22, 1909.

The plaintiff further alleges that, following the vindication of Mrs. Stetson by the Branch Church on November 4, 1909, the defendants, in conspiracy with others, organized and conducted a systematic campaign to undermine the influence of Mrs. Stetson and to discredit her, the plaintiff, and other trustees of the Branch Church, in the minds of the members and regular attendants of that church, in order to procure a controlling faction adverse to Mrs. Stetson. This was followed by letters of admonition to about two thirds of the practitioners who had been summoned to the hearing in Boston in September of 1909, and the subsequent dropping of the cards of eight of them from the Journal. The practitioners, upon whom this discipline was visited, were those who refused to testify to statements against Mrs. Stetson which, if true, would condemn her and her teaching. Notwithstanding the campaign of alleged intimidation above described, the great majority of Mrs. Stetson's students, including the plaintiff, remained loyal to her. The plaintiff avers that because of taking and maintaining this position of loyalty to and consideration for Mrs. Stetson, he incurred the animosity and hatred of the defendants, resulting in an endeavor on their part to discredit him before the world, to oust him from membership in the Branch Church and in The Mother Church, and to inflict upon him church discipline, all in violation of the spirit and the letter of Christian Science.

At the annual corporate meeting of the Branch Church, held January 16, 1910, the plaintiff, whose term of office expired at that time, was not reëlected. It is alleged that for several weeks prior to this meeting, the defendants interfered with the affairs of the Branch Church in many ways, but specifically by addressing a so called "admonition" to seven of the eight trustees of the Branch Church. The plaintiff, one of the eight, took issue with the defendant Smith, who sent the admonitory letter, by asserting that the board of directors of The Mother Church had exceeded their jurisdiction over the trustees of the Branch Church. Smith replied that "there were [are] many things not in the Manual, which because the Board of Directors were [are]

in supreme authority, they would have the right to do." Thereupon announcements were caused to be made in church meetings and resolutions to be adopted, in substance that "no persons would be eligible for any position in the branch church, unless such persons publicly announced themselves that they would recognize and support the Christian Science Board of Directors, 'as now constituted.'" On November 18, 1910, art. III of the by-laws of the Branch Church was amended to include a new § 5, which provided that no person shall be eligible to any office in that church who "follows or adheres to the teaching or practice of any person whose license as a teacher of Christian Science has been revoked by the Directors of The Mother Church, . . . or who follows or adheres to the teaching or practice of any practitioner of Christian Science who has been expelled from The Mother Church." In 1918 the by-laws were further amended by adding art. IX, § 1, in substance, that members "who violate the Tenets or By-Laws of this church, or who follow the practices or teachings, for which another member has been expelled from The Mother Church" shall be liable to discipline.

On or about November 27, 1920, the then first reader of the Branch Church began correspondence with the plaintiff which, in conjunction with personal interviews, took the form of admonitions for alleged erroneous conduct wholly relating to his loyalty to his teacher, Mrs. Stetson, and his alleged disloyalty to the founder and leader of the Christian Science faith; but when requested to furnish specifications thereof he refused to do so. Exhibits fourteen to twenty-five, inclusive, set out in full this correspondence — as well as that between the plaintiff and the board of trustees and another first reader of the Branch Church, of the same general tenor, covering a period of about one year — which resulted in no definite action against him.

On November 7, 1921, art. IX was again amended by adding § 5, which abolished the necessity for admonition, but gave power to the directors, after hearing, to drop from membership any person found to be a follower or an adherent of one who had been expelled from The Mother

Church.    The board of trustees of the Branch Church then caused to be served upon the plaintiff a paper, dated March 29, 1922, entitled "Copy of Charges and Notice of Hearing," in which the charges hereinbefore set forth were reiterated. The plaintiff replied to this paper by letter under date of April 18, 1922, protesting against the procedure pursued against him.    On this same date the board of trustees adopted resolutions, a copy of which was sent to the plaintiff, purporting to drop his name from the roll of membership in the Branch Church.    Subsequently the defendants sent their "paid agent" to admonish the plaintiff, followed by a second "admonishment" by two "paid agents." Thereupon, on May 9, 1924, he addressed a letter to the clerk of The Mother Church, enclosing a transcript of stenographic notes taken in the latter interview, which was replied to by the defendant directors under date of May 14, 1924, in a letter which stated, "It is alleged that you have 'the name without the life of a Christian Scientist,' (Article XI, Section 1, Manual) in that you are a follower and supporter of one whose teaching and practice is contrary to the Tenets of The Mother Church, namely, Mrs. Augusta E. Stetson"; and further stated that "the complaints would be heard at a meeting of the Board to be held May 28th, 1924, at 12:30 P.M. in the Director's Room of The Mother Church." In reply the plaintiff demanded particulars in order that he might properly answer the complaint, but none were furnished.    Later the hearing was postponed to June 11, 1924, and, upon the plaintiff petitioning the United States District Court for relief, the directors were enjoined from holding the meeting until further order of the court.

On June 16, 1924, a letter, purporting to set forth the issues upon which the plaintiff was to be tried, was sent to him by the directors, enclosing copies of "findings and orders" in the case of Mrs. Stetson heard by them in 1909, and referring to a letter from the plaintiff "to the Clerk of this Church dated May 31, which admits specific admonitions" in view of which "the Directors doubt that you need the formal statements furnished by this letter, but . . . you are to have everything needed for a fair and full

hearing." The plaintiff denies having sent to the clerk any letter under date of May 21 [31], 1924.

On October 1, 1924, the directors again addressed the plaintiff by letter, notifying him of a hearing to be held on October 15, 1924, at Boston. His reply thereto, demanding that the charges be specified in particular, was acknowledged by the directors, but the information requested was refused. This led to the filing of a bill in the Supreme Judicial Court, which was heard on October 14, 1924, and the restraining order denied. On October 22, 1924, the plaintiff appeared before the board of directors and, under protest, submitted to a hearing, all specific information concerning charges having been refused, as well as his demand that he be confronted with the complainant. On November 24, 1924, the directors sent the plaintiff certain "preambles and resolutions" placing him on probation until January 15, 1925. In reply, the plaintiff wrote a letter of protest in which he asked, among other things, that he be furnished with "a complete record of the stenographic notes as taken at our trial before you on October 22, 1924"; this was refused.

On January 30, 1925, the plaintiff was again "admonished" by the "paid agent" of the directors, and on the next day received a second "admonishment," based upon grounds entirely different from those formerly relied on and upon which no action had been taken to the knowledge of the plaintiff.

As no word was received in the meantime from the directors, the plaintiff, on March 11, 1925, and again on March 28, wrote to them, expressing his desire that the controversy be determined speedily. On April 8, 1925, the directors formally notified him of the discontinuance of any action under § 1, of art. XI of the by-laws and stated: "As regards your probation, we shall be glad at any time to receive an assurance that you are not affiliated with any organization of a religious nature other than The Mother Church and the activities specified in its Manual, and an assurance that you do not deem anyone a loyal teacher of Christian Science who is not a member of this Church. The action now taken disposes of all questions affecting your member-

ship in The Mother Church other than those which are involved in your probation. Please understand that we are entirely willing for you to continue in The Mother Church as a full member in good standing if you will only fulfill the obligations shown in the By-Laws. In fact, we sincerely hope that you will."

The plaintiff avers that, because of the unlawful and unjustifiable actions of the defendants, in collusion and conspiracy with each other, in pretended compliance with church procedure and law, but in direct violation thereof, and in bad faith, he has been subjected to unwarranted discipline in the church and to ignominy and obloquy before the public, particularly in the Christian Science field, all of which have caused him to be shunned by his accustomed associates, to be otherwise injured in his reputation, to be deprived of valuable property rights in both The Mother Church and the Branch Church, and to suffer damage greatly in excess of money damages, for which he has no complete and adequate remedy at law.

In addition to prayers for general relief, damages and costs, the plaintiff prays that the action of the trustees of the Branch Church, in dropping his name from the roll of membership, and that of the directors of The Mother Church, in placing him on probation, be declared null and void; that all records of such actions be expunged and that he be restored forthwith to full membership in said churches; that the directors be ordered to furnish forthwith to the plaintiff specifications as to when, where and how the teaching and practice of Augusta E. Stetson, C. S. D. are contrary to the tenets of The Mother Church, wherein any society of which he is a member impedes his progress in Christian Science, and, in the event of failure so to do, that all charges against the plaintiff shall be unconditionally retracted by a detailed statement, signed by said defendant directors, to be published in the daily press and in all Christian Science periodicals, that the charges made against the plaintiff are without foundation in fact; that their action placing him on probation was unwarranted and has been

annulled, and that a certified copy of said statement be sent to the plaintiff forthwith.

The Christian Science Board of Directors, as a board and as individuals, The First Church of Christ, Scientist, in Boston, Massachusetts, and Clifford P. Smith, each filed a demurrer in substantially the same form. Each demurrer assigns thirty-eight causes therefor, in substance as follows: Want of equity; no civil right of the plaintiff has been violated for which he is entitled to seek relief in this court; the matter and controversies are purely ecclesiastical in character involving questions of ecclesiastical law, into which this court will not inquire and as to which it will not adjudicate; the suit is premature in that it does not appear that the plaintiff has exhausted his remedy within The First Church of Christ, Scientist, in Boston, Massachusetts, and in that no final adjudication or decision affecting the plaintiff's rights has been made by the Christian Science Board of Directors; the bill does not state briefly the material facts and circumstances relied on by the plaintiff and does not omit immaterial and irrelevant matter as required by G. L. c. 214, § 12; the bill is multifarious in that there is a misjoinder of legally distinct and equitably inconsistent demands and in that this court is asked to review the proceedings taken by different church boards in three distinct church disciplinary cases, to wit: the action of the Christian Science Board of Directors of The Mother Church against Augusta E. Stetson in 1909, in which she acquiesced; the action of the Board of Trustees of First Church of Christ, Scientist, New York City, against the plaintiff in 1922; and the action of the Christian Science Board of Directors against the plaintiff in 1924; the bill joins different causes of complaint which cannot properly be tried together; laches; the bill is inconsistent within itself in that it alleges that the board of directors was not duly constituted and asks relief against such board of directors as if properly constituted; the plaintiff has a complete and adequate remedy at law if the members of the board of directors were not duly elected, that is, by mandamus; the plaintiff is not entitled to relief

restoring him to membership in any organization, the validity of which he assails and the by-laws of which he violates as appears from his bill. The demurrer further assigns as causes therefor, in twenty-four paragraphs covering over four printed pages, an analysis of the particular allegations of the plaintiff's bill contained in fifty-four paragraphs and covering, with annexed references, two hundred and thirty-one printed pages. It is impracticable to set out even in a condensed form these several causes of demurrer. It is sufficient here to say that they allege that the particular allegations are irrelevant, discursive, argumentative, and some of them are inconsistent and repugnant to other allegations. The several demurrers were sustained by an interlocutory decree, and a final decree was entered dismissing the bill. The case is before this court on appeal from those decrees.

The bill of complaint, set out and argued in two hundred and thirty-one printed pages, is obnoxious to G. L. c. 214, § 12, and runs counter to every rule of good equity or common law pleading in that it contains arguments, discursive narrative, evidence and extraneous and irrelevant matter. Because of the failure of the pleader to obey the requirements of G. L. c. 214, § 12, the demurrers were sustained rightly.

The bill is multifarious. It seeks relief from the "dropping" of the plaintiff's name from the roll of membership in the Branch Church in 1922. The allegation that the action of the Branch Church "was not in good faith . . . but was done by the branch church authorities, in connivance with the Directors of The Mother Church, and said Clifford P. Smith . . . in furtherance of their preconceived plan to oust Plaintiff from membership in The Mother Church, or otherwise subject him to discipline, and thus discredit him before the Christian Science field and before the world," is not sufficient to make The Mother Church a party in interest to the Branch Church proceedings, and The Mother Church should not be called upon to defend the conduct of the Branch Church or to attend while such question is being decided between the plaintiff and that church.

In the matter of placing the plaintiff on probation by The Mother Church in 1924, the Branch Church or its trustees of 1922 have no legal interest in the prayer of the plaintiff that the action of the Christian Science Board of Directors shall "be adjudged null and void and ordered expunged from the records . . . and that the Plaintiff be forthwith restored to his full membership in said Church."

Relief is not asked for the expulsion of Mrs. Stetson from The Mother Church in 1909 or from certain acts of discipline taken against other members of the Branch Church in 1909 and 1920; but the plaintiff seeks to have the court decide as a fact in his proof of bad faith and conspiracy toward him that the procedure and disciplinary action taken in her and their cases were in bad faith.

It is obvious that The Mother Church has no responsibility or legal interest in the disciplinary action of the Branch Church and it is equally clear that the Branch Church has no legal interest in such action of The Mother Church.

We perceive in the allegations of fact in the bill no sufficient statement which, if present, would warrant a conclusion of fact that The Mother Church in the action of its Board of Directors, and the Branch Church in the action of its trustees, separately acted in bad faith or were bound together in fraud and conspiracy to injure Mrs. Stetson and her followers including the plaintiff. *Raynes* v. *Sharp*, 238 Mass. 20, 25. *Krauthoff* v. *Attorney General*, 240 Mass. 88, 92. *Spear* v. *H. V. Greene Co.* 246 Mass. 259, 269. It is unnecessary to discuss other grounds of demurrer.

*Decrees affirmed with costs.*